Douglas, et al. v. St. Louis Zinc Co., et al.

THOMAS DOUGLAS, JR., *et al.*, Respondents, *vs.* ST. LOUIS ZINC Co., *et al.*, Appellants.

1. *Mechanic's lien—Attaches, when—Effect of filing demand.*—The right of a mechanic or material man against property subject to a mechanic's lien commences at the time the building is commenced, and the labor or materials are furnished; and for all beneficial purposes the lien commences from that date, and while the claimant cannot enforce his lien against the property until he has complied with the provisions of the statute, still his right to the lien exists from the time that his work and materials go into the building. When the account is filed, the lien relates back to the commencement of the building, and cannot be cut off or divested by any transfer or assignment of the owner after the building is commenced.

2. *Mechanics' liens—Bankrupt act of the United States.*—It was not intended by the United States Bankrupt Law to cut off or destroy liens or vested rights acquired under State laws, but rather to preserve all liens and enforce a distribution of the property of the bankrupt with reference to the rights of all, whether those rights were created by a statutory lien or otherwise. And a person, entitled to a mechanic's lien under the laws of this State, has a right, notwithstanding the commencement of proceedings in bankruptcy, to perform all acts necessary to the final prosecution and perfection of his lien under the statutes of this State.

3. *Mechanics' liens—Bankruptcy—Jurisdiction.*—When the property of a bankrupt under the United States Bankrupt Law is subject to a mechanic's lien, the bankrupt court may order the assignee to sell the property and pay off the lien out of the proceeds, or may order the property to be sold subject to the lien, and in that case the courts of the State whose statute gives the lien, would have jurisdiction to ascertain and enforce the lien against the property, notwithstanding the proceedings in bankruptcy.

*Appeal from St. Louis Circuit Court.*

*Ford Smith*, for Appellants.

I. Under our mechanics' lien law the lien does not attach until the account is filed in the office of the clerk of the Circuit Court. This is evident from an examination of the law. (2 Wagn. Stat., 907.) From the first section it is evident that it was not the intention of the Legislature to give a lien at the time of doing the work. The section expressly provides that something else must be done to place the lien upon the property. Until the provisions of this chapter are complied with, no lien exists. Section 5 of the same chapter recites what provisions of the chapter must be complied with

in order to create a lien. This section also speaks of the lien as not yet in existence. It makes it the duty of every person "seeking to obtain the benefit of the provisions of this chapter," and not of "every person having a lien," to file, &c. He is to file a just and true account of the "demand due him," and not an account of the "items which compose his lien." It is the account which "is to be," not which is, a lien.

Section 8 also provides, that "The petition among other things shall allege the facts necessary for securing a lien under this chapter." Reading these sections together, it is clear that the lien does not attach until the account is filed. Until the account is filed, the contractor is spoken of as having a right to obtain a lien, but not as having the lien.

Section 16 also aids us in the interpretation of the act. Before filing the account, the lien is spoken of as something which "is to be," as something which the contractor "shall have," upon doing something else—as always in the future. But after the account is filed, the language changes. The lien is spoken of as in existence. By section 16 * * "no lien shall continue to exist by virtue of the provisions of this chapter for more than ninety days after the lien shall be filed, unless, within that time, an action shall be instituted thereon, as hereinbefore prescribed."

This change in the language of the statute is radical and significant. Before the account is filed, the lien is treated as a thing which a party may obtain by proper action, viz: by filing his account within the prescribed time. After the account is filed, the lien is spoken of as something which the party has. The change is so radical, that it makes the intention and meaning of the Legislature clear.

Other statutes also aid us in the interpretation of this one. Whenever in our statutes it is intended that a lien shall attach upon rendering the services, no such condition is attached. (See "act concerning Boats and Vessels," R. S., 1855, Vol. 1, p. 302–303, ch. 20, § 1. Also see statute concerning lien for "Keeping horses and other animals," 2 Wagn. Stat. p. 906, §§ 1–2). Under the act as now in force, this court has decided

that the lien did not attach until the account was filed. (Stebel vs. Stock, 31 Mo., 456; Matlack vs. Lare, 32 Mo., 262; Gault vs. Soldain, 34 Mo., 150, and particularly *In re* Dey, 3 Bank Reg. 81.)

II. The filing of a petition in bankruptcy against a debtor brings his property under the exclusive jurisdiction of the bankruptcy court. (See Jones vs. Leach, 1 Bank. Reg., 165; Pennington vs. Sale, 11 Bank. Reg., p. 157; *In re.* Rosenberg, 3 Bank. Reg., 33.)

III. After the petition in bankruptcy is filed, no lien against the property of the bankrupt can be acquired or enforced by proceedings instituted in any court but the bankruptcy court, in which the case is pending. No other can maintain jurisdiction over the property by proceedings instituted after the petition in bankruptcy is filed. The question here is a question of jurisdiction. It has been established, that the filing of the petition in bankruptcy transferred the property of the bankrupt into the exclusive jurisdiction of the United States District Court, as a court of bankruptcy. It has also been established, that the law does not attach until the account is filed, therefore, no lien could be established or enforced by the State Court, or by proceedings instituted in the State court after the petition in bankruptcy was filed. No principle of law is better settled than, that where one court of competent jurisdiction has obtained jurisdiction over property, no other court can interfere with that jurisdiction, or obtain jurisdiction over the property. (In the matter of Hellar, 3 Paige, 199; Peale vs. Phipps, 14 How., [U. S.] 368.)

Under the bankrupt act of 1867, the courts, both State and national, have repeatedly held, that after a petition in bankruptcy was filed against a debtor, no court, other than the bankruptcy court, could obtain jurisdiction over, or in any way affect, the property of the bankrupt, by proceedings com menced after the petition is filed. (*In re.* Barson, 1 Bank. Reg., 125; Jones vs. Leach, 1 Bank. Reg., 165; *In re* Wynne, 4 Bank. Reg., 5.)

The filing of the petition in bankruptcy against the St. Louis Zinc Co. divested the State courts of their jurisdiction over the property of the bankrupt, and made it impossible for a State Court to impose a lien upon its property by any proceedings commenced after the 18th day of November, A. D. 1870. It cannot be said, that plaintiffs were forced to come into the State court for the reason that the bankrupt court could not enforce their lien. By the 1st section of the bankrupt act, jurisdiction is given to the U. S. District Court, as a court of bankruptcy, to "ascertain and liquidate the liens and other specific claims on the property of the bankrupt."

The filing of the petition in bankruptcy gives to the bankrupt court the custody and control of, and jurisdiction over, the entire estate of the bankrupt. That court has full power to distribute that property "so as to secure the rights of all parties, and due distribution of the assets among all the creditors." (Bankrupt Act 1867, § 1; *In re* Dey, 3 Bank. Reg., 8; Stuart vs. Hines, 33 Iowa, 160; Davis' Ass'nee vs. Campbell, 6 Bank. Reg., 145, 150, 161.)

IV. The orders of the U. S. District Court, copied into the transcript in this case, are simply void. They cannot affect this case in the least. Had the suit been pending in the State court when the petition in bankruptcy was filed, and jurisdiction over the property been then in the State Court, the Federal Court might have given the assignee leave to appear in the State court and defend. But that would have been only a permission granted to one of its officers. It would not thereby affect the jurisdiction over the *rem*, for that would already be in the State court. Permission to the assignee, to defend actions pending when the petition in bankruptcy is filed, is all the U. S. Court can do in regard to suits in other courts. It is all the bankrupt act gives it power to do. (See clause 2, of section 16 of the Bankrupt Act.)

*A. H. Bereman*, for Respondents.

I. From the time the account accrued in August, the lien attached; it was inchoate, it is true, but it was a valid lien. No

sale, *bona fide* by the owner during the six months, can defeat the mechanic's lien, although no claim be filed, and no suit instituted. Section 7 of chapter 195, Gen. Stat., p. 766, provides, that "The lien for work and materials as aforesaid, shall be preferred to all other incumbrances which may be attached to or upon such building (and) subsequent to the commencement of such building." Assignees in bankruptcy and in insolvent proceedings are not *bona fide* purchasers. (Kuhleman vs. Scheele, 35 Mo., 142; Gorman vs. Sagrue, 22 Mo., 137; M'Murray vs. Taylor, 30 Mo., 263; Ashdown vs. Woods, 31 Mo., 465). Clearly the lien existed for six months; the institution of suit, and the filing, only prolonged and preserved it.

II. As plaintiff's claim for a lien was purely statutory, he was obliged to follow the statute to obtain the benefit of it. He was bound to file with the clerk, and was bound to commence his suit within the times prescribed, and he could not go into the bankrupt court claiming a lien, until he was able to show he had taken the statutory steps to perpetuate and establish it. "The lien could be enforced only in the State courts, and even after adjudication the lienor has a right to commence suit, when such suit is necessary to keep his lien alive." (Clifton vs. Foster, 3 Bank. Reg., 162; Cole vs. Duncan, Legal News, Chicago, Vol. 3, p. 323; *In re* Cook and Gleason, Bankrupts, 3 Leg. News, p. 410; *In re* McCoulter, 3 Leg. News, 377.)

III. It is clear, plaintiffs did not lose their lien by failing to take the statutory steps to enforce it before proceedings in bankruptcy. The bankrupt act does not necessarily divest the State Courts of any or all jurisdiction; no creditor is compelled to submit to the jurisdiction of the bankrupt courts exclusively. Bankruptcy proceedings may suspend the action of the State Court, but they only suspend temporarily. (Bankrupt Act 1867, §§ 1, 26.) Under this section, it is provided, that no creditor, whose debt is provable, shall be allowed to prosecute to final judgment, until the question of the discharge shall have been determined. The State court, after

all, may, in any disputed case, by leave of the court in bankruptcy, proceed to a judgment. Without this permission the State court could only stay proceedings on application of the bankrupt to await his discharge, and, if he was an unreasonably long time about it, the State Court could proceed with the case without leave of the bankrupt court, and in spite of the opposition of the bankrupt. Most certainly, then, the State Court could proceed with the permission of, the District Court.

VORIES, Judge, delivered the opinion of the court.

This action was commenced in the St. Louis Circuit Court on the 26th day of November, 1870, to enforce a lien of a mechanic or material man against a building and the premises on which it was erected, for materials furnished to be used, and which were used, in the erection of said building.

No objection is made to the petition. The Zinc Company made no answer to the petition. The defendants, Eddy and Martindale, filed a joint answer, in which they denied the allegations of the petition, and also set up by way of defense to the action new matter, of which new matter so set up in defense it is only necessary to set forth, in order to a proper understanding of the case as presented to this court, the following :

The defendants further answering state, that plaintiffs ought not to maintain their suit, for they say, that on the 18th day of November, 1870, a creditor of said St. Louis Zinc Co., in pursuance of an act of Congress of the United States, entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867, duly filed in the office of the Clerk of the District Court of the United States for the Eastern District of Missouri a petition in bankruptcy against said St. Louis Zinc Company, upon which said St. Louis Zinc Company was afterwards adjudicated a bankrupt by said District Court of the United States for said District, and that thereafter John Ford Smith and A. L. Bergfield were duly appointed and qualified as co-assignees of said St. Louis Zinc

Company, and Enos Clark, Esq., a register in bankruptcy in and for said District, by an instrument in writing under his hand and the seal of said court, bearing date the 23d day of December, A. D. 1870, did convey and assign to said Smith and said Bergfield, as such co-assignees as aforesaid, all the estate, real and personal, of the said St. Louis Zinc Company, including all the property of whatever kind of which it was possessed, or in which it was interested or entitled to have, on the 18th day of November, A. D. 1870; and no suit has ever been brought against said assignees by said plaintiffs, nor have plaintiffs ever made them parties to this suit."

A replication was filed by the plaintiffs to the new matter set up in the answer; to the part of the answer before set out, the plaintiffs replied as follows: "And for further reply, they say, that by order and leave of the United States District Court in and for the Eastern District of Missouri, wherein the said St. Louis Zinc Company was so adjudged a bankrupt, they were permitted, as by the act of Congress of the United States, entitled an act to provide a uniform system of bankruptcy throughout the United States, they might be, to prosecute this, their claim, to final judgment in this court against the said real estate so mentioned in their petition, and so having been assigned to said John Ford Smith and Alfred L. Bergfield, having been sold by them to the said James P. Beck, subject to this and all other incumbrances and not freed of the liens of creditors therein, as will appear by the order and permission of said court filed in this cause."

On the 30th day of October, 1872, a jury was impaneled and sworn to try the cause, after which the plaintiffs, to sustain the issues on their part, offered to read in evidence a certified copy of an order and entry made in, and by, the District Court of the United States for the Eastern District of Missouri, in the matter or case of Thomas Douglas and Oliver Lobsinger vs. John Ford Smith and A. L. Bergfeld, co-assignees of the St. Louis Zinc Company a bankrupt.

The substantial portion of the order was as follows:

"Tuesday, March 2nd, 1872.

"Now at this day came the plaintiffs by Alvah H. Bereman, Esquire, their attorney, and also the defendants, by John Ford Smith, Esquire, for himself and his co-assignee, and the demurrers to certain parts of the answer of defendants herein, and the motions to strike out certain other parts of the said answer, having been argued by counsel and submitted to the court, and the court being of the opinion, that inasmuch as the property in question was sold by the order of this court subject to all existing mechanic's liens, said property still remains subject to said liens, which liens are enforceable solely in the proper State courts, free from all further control or interference of this court therewith; the custody and control of said property and all rights of the assignees in bankruptcy with respect thereto having been fully divested by the sale aforesaid. It is ordered, that this suit be, and the same is, hereby dismissed, without prejudice to the plaintiffs' rights, if any they have, to enforce their mechanic's lien in any State court having jurisdiction thereof, and it is further ordered, that said plaintiffs pay the costs of this suit, to be taxed, &c."

The defendants objected to the said order being received as evidence in the cause, on the ground that the evidence was incompetent and irrelevant, and because the same could not confer jurisdiction on the court, and because the pleadings show, that at the time of the filing of the lien the property described in the petition had passed out of the jurisdiction of the court. The objection to the evidence was sustained, and the evidence excluded. To which ruling the plaintiffs excepted. The plaintiffs then offered in evidence another order rendered and made by and in said United States District Court in said cause, to substantially the same purport of the one set forth, but upon another motion which had been pending in the cause.

This was also objected to and excluded for the same reasons given for the rejection of the first order, and the plaintiffs again excepted.

The plaintiffs also offered in evidence a certified order of said District court, by which they were specially directed to proceed with their suit in the St. Louis Circuit Court to establish their lien, &c. This was also objected to and excluded for the reasons aforesaid, and exceptions taken. The plaintiffs then offered evidence to prove the allegations in their petition and to sustain their cause of action. The defendants objected to all or any evidence on the part of the plaintiffs, on the ground that the court had no jurisdiction over the cause.

This objection was also sustained and all evidence excluded, and exceptions taken. The court then instructed the jury to find a verdict for the defendants, which was done. The plaintiffs, in due time filed a motion for a new trial, which was overruled by the court, and final judgment rendered against the plaintiffs, from which they appealed to General Term of said St. Louis Circuit Court, where the judgment at Special Term was reversed, and the case remanded for further hearing. From this last judgment the defendants appealed to this court.

The facts shown by the record in this case, and which seem to be conceded by the parties, are about as follows: That the plaintiff sold and delivered to the St. Louis Zinc Company at different times, from the 7th day of March, 1870, to the 27th day of August, 1870, various articles of lumber and material to be used, and which were used, in the erection of a building by said Zinc Company upon the lot or premises described in the petition in this case; that on the 26th day of November, 1870, they filed a true account of said lumber and materials furnished, verified by affidavit as the law directs, with a description of the building and premises to be charged, in the office of the clerk of the Circuit Court of St. Louis County, the same being the county where the premises are situate; that this account was made out and filed in conformity to the law concerning mechanics' liens; that, on the same day of the filing of this account or lien, this suit was commenced in the St. Louis Circuit Court to enforce said lien and collect the account by a sale of the house and premises named in the petition.

It is further shown, that on the 18th day of November, 1870, after the lumber had been furnished and used, and before the account was filed in the clerk's office, a creditor of the St. Louis Zinc Company, in pursuance of the act of Congress concerning Bankruptcy, filed in the proper office a petition in bankruptcy against said Zinc Company, and that said Zinc Company was afterwards in pursuance of said petition adjudicated a bankrupt, and its property assigned to assignees as is stated in the answer. And it further appears, that after the bankruptcy of the Zinc Company the other defendants by purchase or otherwise became interested in the premises against which the lien is attempted to be enforced, and were therefore made parties defendant to the action.

Two questions are raised and argued by counsel for the defendants, Eddy and Martindale, in this court. First, it is insisted, that, as no account was filed as a lien against the St. Louis Zinc Company in the office of the Clerk for St. Louis County until after the filing of the petition in bankruptcy against said company, the assignees of said bankrupt's estate acquired the title to all of the bankrupt's property in the same condition that it was at the time of filing the petition in bankruptcy, and that the right to file the account and enforce a lien against the premises and house, named in the petition, was cut off and lost by the proceeding in bankruptcy. Second, it is contended, that, even if the lien was not lost, the Circuit Court of St. Louis County, after the petition in bankruptcy, had, and could have, no jurisdiction in the matter, but that the plaintiffs' lien could only be adjudicated and enforced in the District Court having charge of the proceedings in bankruptcy.

The first position taken by the defendants depends upon a proper construction of the statute of this State concerning liens of mechanics and those furnishing materials for builders, &c. (Wagn. Stat., 907.) The first section of that act provides, that "every mechanic or other person who shall do or perform any work or labor upon, or furnish any materials, fixtures, engines, boiler or machinery for any building, erection, or improvements upon land, or for repairing the same, under

or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this chapter, shall have, for his work or labor done, or materials, fixtures, engine, boiler or machinery furnished, a lien upon such building, erection or improvements, and upon the lands belonging to the owner or proprietor, upon which the same are situated, to the extent of one acre, &c."

The 3rd section of the same act provides, that "the lien for the things aforesaid, or work, shall attach to the buildings erections, or improvements, for which they were furnished, or the work was done, in preference to any prior lien or incumbrance," &c. ; and said section further provides that the buildings may be sold separate from the land in case of a prior incumbrance, and the purchaser may remove the building from the land.

By the 5th section it is provided, that "it shall be the duty of every original contractor within six months, and every journeyman and day laborer within thirty days, and of every other person seeking to obtain the benefits of the provisions of this chapter within four months, after the indebtedness shall have accrued, to file with the Clerk of the Circuit Court of the proper county a just and true account of the demand due him or them, after all just credits have been given, which is to be a lien upon such building or other improvement, and a true description of the property upon which the lien is intended to apply, &c.

It is also provided by the 16th section of the act, that all actions commenced for the enforcement of liens under said law shall be commenced within ninety days after filing the lien.

Now it is contended by the defendants, that it is the filing of the account in the clerk's office which constitutes the lien, and that up to that time no lien exists ; and as that was not done in this case until after the commencement of the proceedings in bankruptcy against the Zinc Company, the property passed to the assignees of the bankrupt without any reference

Douglas, et al. v. St. Louis Zinc Co., et al.

to the lien, and that none could afterwards be created.  I do not think that this is a proper construction of the statute.  If the filing of the account is construed to be the creation of the lien, and not merely a means used and required for its enforcement, so as not to be burdensome to others, then there are other sections of the statute which would be wholly inconsistent with the position taken by defendants.

The 7th section of the statute provides, that "the lien for work and materials as aforesaid, shall be preferred to all other incumbrances which may be attached to or upon such buildings, bridges or other improvements, or the grounds, or either of them, subsequent to the commencement of such buildings or improvements."

The 19th section provides, that "every person except the original contractor, who may wish to avail himself of the benefits of the provisions of this chapter, shall give ten days notice before filing the lien, as herein required, to the owner, owners or agents, or either of them, that he or they hold a claim against such building or improvements, setting forth the amount and from whom the same is due."

The 22nd section provides, that "the liens for work and labor done or things furnished, as specified in this chapter, shall be upon an equal footing, without reference to the date of filing the account or lien, and in all cases where a sale shall be ordered, and the property sold, which may be described in any account or lien, the proceeds arising from such sale, when not sufficient to discharge in full all the liens against the same, without reference to the date of filing the account or lien, shall be paid *pro rata* on the respective liens ; provided such account or liens shall have been filed and suit brought as provided by this chapter."  It is also provided by the statute, that suit shall be brought for the enforcement of the lien in ninety days after filing the account, &c.  It will be seen from these provisions of the statute, that while the lien secured by the statute is incomplete and cannot be effectually enforced without the filing of the account, and the commencement of an action ; yet the right of the claimant commences

at the time the building is commenced, and the labor or materials are furnished, and for all beneficial purposes, the lien commences from that date; and while the claimant cannot enforce his lien against the property until he has complied with all of the provisions of the statute, still his right to the lien exists from the time that his work or materials go into the building. It requires no further contract, consent or agreement on the part of the owner of the building or lands, or of his assignees after the commencement of the building, to confer a right on the claimant to perfect and enforce his lien against the property. The right is vested in the claimant to file his account and enforce his lien without the consent or concurrence of any one, and, although these things are required by the statute in order to an enforcement of the lien, yet they do not originate the right to the lien—the right growing out of the contract to furnish the material and its use in the building or erection. Therefore, when the account is filed, the lien relates back to the commencement of the building, and cannot be cut off or divested by any transfer or assignment of the owner after the building is commenced. This view of the law is fully sustained by the case of McGready vs. Harris, decided by this court at the October term, 1873, 54 Mo. 137; and the same thing was held by this court, under a statute substantially the same as the present statute, in the case of Kuhlemann vs. Schuler, (35 Mo., 142,) and also in the case of Clifton vs. Foster, assignees, in Massachusetts, and reported in 3 Bank. Reg., 162; see also *In re* J. M. Coulter in bankruptcy in the District Court of Oregon, 3 Chicago Legal News, 377.

Cases may be found, that seem to hold a contrary view, of statutes nearly similar to ours, but we think the above view of the law comports with the evident intention of the Legislature, and it is very evident that it was not intended by the bankrupt act to cut off or destroy liens or vested rights acquired under the State laws, but rather to preserve all liens, and enforce a distribution of the property of the bankrupt with reference to the rights of all, whether those rights were

created by a statutory lien or otherwise. We therefore think, that the plaintiffs had a right, notwithstanding the commencement of the proceedings in bankruptcy, to perform all acts necessary to the final prosecution and perfection of their lien, and which are required by the statute of the State.

The second point made by the defendants is, that although the lien of the plaintiffs was not lost by the commencement of proceedings in bankruptcy against the Zinc Company, still that the St. Louis Circuit Court had no jurisdiction over the matter, but that the rights of the parties could only be adjudicated in the United States District Court having charge of the proceedings in bankruptcy. In reference to this question this case is almost identical in all its essential particulars with the case before referred to, decided by the Supreme Judicial Court of Massachusetts, reported in 3rd Bank. Reg. 162. Grey, Justice, in delivering the opinion of the court in that case, uses this language: "Under the provisions of the bankrupt act already cited, the court of the United States sitting in bankruptcy may indeed authorize the assignee to redeem the property, and discharge the lien, or they may order the entire property to be sold, and ascertain the amount of debt secured by the lien, in which case the debt would be preferred in the distribution of the proceeds, and the purchaser of the estate would take it discharged of all incumbrance. * * * But on the other hand, those courts may in their discretion, without investigating the validity or the extent of the lien, allow the assignee to sell the property subject to the lien, and the bankrupt's estate to be finally settled without any determination of the rights claimed under the lien; in which case the petitioners would retain those rights as against the purchaser of the property. * * * If the courts of the United States sitting in bankruptcy should abstain from ascertaining the amount of the lien, and providing for its satisfaction out of the property or the proceeds of a sale thereof, the only way of enforcing it would be under the present petition. The rights of the creditor will be preserved, and all interference with the custody or the jurisdiction of the Na-

tional courts avoided, by ordering this petition to stand continued in the Superior Court to await the result of the action of the courts of the United States in the proceedings in bankruptcy."

In this case the plaintiffs offered in evidence a transcript from the records of the court in bankruptcy, by which they proposed to prove, as they had alleged in their replication, that they had attempted to litigate their demand, and enforce their lien, in the bankrupt court against the assignees of the St. Louis Zinc Company in bankruptcy; that that court had ordered the property to be affected by the plaintiff's lien to be sold by the assignees in bankruptcy, and that the property had been so sold subject to plaintiff's lien, after which the proceedings on the part of the plaintiffs in the bankrupt court had been dismissed, and plaintiffs ordered, by an order of said court, to proceed in the courts of this State to establish and enforce their said lien. All of this evidence was rejected by the court trying this cause, and all other evidence tending to prove the plaintiff's case was also rejected, on the ground that the State Courts had no jurisdiction of the cause. This we think was erroneous. We can see no reason why the court could not, after the property had been disposed of in the bankrupt court, subject to the lien of the plaintiffs, and all of the proceedings dismissed therefrom, proceed to try the cause and determine the rights of the parties.

The judgment of the Circuit Court at General Term will be affirmed, and the case remanded to Special Term for further proceedings. The other judges concur.