JOHN W. PAGE, Appellant, v. IRA J. BETTES ET AL., Respondents.

### April 13, 1885.

1. MECHANIC'S LIENS—SCOPE OF ACT.—By section 3172, Revised Statutes, a lien is given to "every mechanic, or other person, who shall do or perform any work or labor upon, or furnish any materials * * for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, etc." By section 3174 of same Statutes the lien is made to attach to the *buildings or improvements* in preference to any prior lien *upon the land* upon which said buildings had been put. And section 3178 of same Statutes expressly prefers such lien "to all other incumbrances which may be attached to or upon such building, etc., or other improvements, or the ground, or either of them, *subsequent* to the commencement of such building or improvements."

2. SAME—TIME FOR FILING ACCOUNT.—In the case of a *running account* under a *continuous contract* the law is well settled that the mechanic, etc., has six months (if an original contractor) from the *date of the last item*, within which to file his account and perfect his lien.—*Stine* v. *Austin*, 9 Mo. 258, 259; *Squires* v. *Fithian, Adm'r*, 27 Mo. 134. If, as a matter of fact, the several items of the account were for work, etc., under *separate contracts* between the owner and original contractor, the account must be filed within six months from the date of the item under *each independent contract.*—*Livermore* v. *Wright*, 33 Mo. 31. The determination

of the character of the contract is necessarily a mixed question of law and fact.—Phillips' Mech. Liens, sect. 325. The jury are to find what the contract in fact was; and whether the contract thus found is entire and continuing, is a question of law for the court, but the court cannot withdraw the question of fact from the jury.

3. SAME—WHAT ARE CONTINUING OR ENTIRE CONTRACTS AND WHAT SEPARATE CONTRACTS.—Where work, distinct in its nature, is performed at different times, the law supposes it to have been performed under distinct engagements. So where two distinct contracts are in fact made, as for different parts of the work, the work done under each contract must be considered as entire of itself. But where work or material is done or furnished, all going to the same general purpose, as the building of a house, or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties *had it in contemplation* that the whole should form but one, and not distinct matters of settlement, the whole account must be considered as a unit, or as being but a single contract.—Phillips on Mech. Liens (2d ed.) sect. 229.

4. SAME — SUBSEQUENT INCUMBRANCES — RIGHTS OF, AS AGAINST THE MECHANIC.—An incumbrance or lien made or acquired after the making of the contract with the owner by the mechanic or material man, enforcible under the statute, is a subsequent incumbrance or lien under the statute, and does not break or interrupt the continuity of the lien of the mechanic or material man.

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, Judge.

*Reversed and remanded with directions.*

Statement of case by the court.

This is an action to enforce a mechanic's lien on a house and lot situate in the town of Holden, Johnson county. The petition states, substantially, that in August, 1880, the defendant, Ira J. Bettes, was the owner of the house and lot in question, and has ever since continued in possession thereof. That at said date first named he made a contract with the plaintiff whereby plaintiff was to furnish the necessary material and perform the labor in repairing said dwelling house, for a reasonable compensation, to be paid when the same was completed; that plaintiff entered upon the performance of said contract, and completed the same on the 22d day of February, 1882; that the reasonable value of said labor and materials was

$188.75; and that afterwards, to wit, on the 28th day of March, 1882, the said Bettes having failed to pay for the same, the plaintiff duly made out the account and filed the same with the circuit clerk for the purpose of securing a mechanic's lien on said property. The said account so filed is as follows:

"1880.

| | | | |
|---|---|---|---|
| September. | To stone furnished for a new foundation | $19 | 00 |
| October. | To labor, building new foundation | 40 | 00 |
| October. | To labor, raising house | 8 | 00 |
| 1881. | | | |
| January. | To lumber furnished to repair house | 30 | 00 |
| March. | To lumber furnished to repair house | 15 | 00 |
| July. | To labor, carpenter work, repairing house | 15 | 00 |
| September. | To labor, carpenter work, repairing house | 18 | 00 |
| November. | To labor, carpenter work, repairing house | 10 | 00 |
| December. | To labor, hardware furnished, repairing house | 8 | 50 |
| " 24th. | To blinds for windows, repairing house | 9 | 24 |
| 1882. | | | |
| February. | To carpenter work repairing house | 20 | 00 |
| | Total | $188 | 75 |

The petition then avers that the defendants, J. P. Orr and John J. Cockrell, subsequently became the purchasers of said property at an execution sale against said Bettes, which purchase was subject to plaintiff's mechanic's lien. The usual prayer was made for judgment and the enforcement of the mechanic's lien. Bettes made no an-

swer. The defendants, Orr and Cockrell, made answer tendering the general issue.

The plaintiff on the trial, had before the court sitting as a jury, made proof of the filing of the lien pursuant to statute, of date March 28th, 1882, and also gave evidence tending to prove the facts alleged in the petition, and the work done and the materials furnished as stated in the account. The evidence also tended to show that while the defendant, Ira J. Bettes, did not have a deed to the property, yet he was the equitable owner of it, and was in the occupancy thereof, and was recognized and treated as the owner. Ira J. Bettes stated in his testimony that the title to this property stood in the name of W. H. Bettes & Co., and that he was a member of said firm; but he had long since paid them for the property, and it was ever recognized as his.

Two sheriff's deeds were read in evidence on behalf of defendants, which were sufficiently noted in the opinion,

At the instance of the plaintiff the court gave the following instructions:

"*First*. If the court, sitting as a jury, shall find from the evidence that the plaintiff contracted with the owner of the premises described in the petition, to furnish the labor and material necessary to repair the house thereon, and all the labor performed or caused to be performed, and material furnished by plaintiff was done and furnished in and about making repairs on said house, which were needed on said house, or were in contemplation of the parties to the contract at the date thereof, then such labor and material are presumed to have been done and furnished under one and the same contract.

"*Second*. The court further declares the law to be, that if it shall find from the evidence in the case that W. H. Bettes & Co. was, prior to the time of the making of the alleged contract between plaintiff and defendant, Ira J. Bettes, the owner of the premises described in the petition, and that, at and prior to the execution of said contract, the defendant, Ira J. Bettes, had paid W. H. Bettes & Co. the purchase money for said premises, then said Ira J.

Bettes was the owner thereof within the meaning of section 3172, chap. 47, Revised Statutes of Missouri.

"*Third.* If the court should find from the evidence in the case that the defendants, Orr and Cockrell, on the 18th day of February, 1882, became the owners of the premises described in plaintiff's petition, and that on said day plaintiff had become, and was entitled to a lien for labor performed and material furnished in repairing the dwelling house situate thereon, by virtue of a contract with the owner thereof prior to that time, then it was not necessary for plaintiff to have inserted the names of said Orr and Cockrell in the account required to be filed by section 3170, chapter 47, of the Revised Statutes of Missouri, in order to establish his lien against said premises in the hands of said Orr and Cockrell.

"*Fourth.* If the court should find from the evidence that the labor was performed and the material furnished by plaintiff, charged in his account, under and by virtue of a single contract, then plaintiff is entitled to an indivisible lien, notwithstanding a longer period than six months may have elapsed from the date of said contract to the last act of performance of said contract by him, and notwithstanding that the evidence may show that the services were not performed, nor the material furnished in the exact order, or at the exact time as charged in said account, provided that such labor was performed and such material furnished, and provided that, at no time after date of such contract, did a period of six months intervene between the date of the contract and the commencement by plaintiff to perform his part of said contract, and between the different acts of performance on his part thereafter, and provided plaintiff has otherwise complied with the law in the filing of his account, and the institution of his suit herein."

The plaintiff also asked the following instructions, which the court refused:

"*Fifth.* If the court should find from the evidence that plaintiff, between the 28th day of October, 1881, and the 18th day of February, 1882, furnished mechanical labor

in repairing the dwelling house, situate on the lot of land described in the sheriff's deed read in evidence, under the contract as stated in his petition, and the court should further find from the evidence that plaintiff had no notice of the execution sale recited in said sheriff's deed, at the time of furnishing the material and performing the labor, then said deed would not operate by way of relation to the sale therein, so as to defeat any lien to which plaintiff is otherwise entitled under the mechanic's lien law of this state.

"*Sixth.* The court declares the law to be that the lien of the judgments, recited in the sheriff's deed in evidence to defendants Orr and Cockrell, did not attach until the second and fourth days of March, A. D. 1881, and that a subsequent sale and deed thereunder would not defeat a lien for repairs, made pursuant to a contract prior to said dates, even though part of the work and material may have been furnished and performed subsequent to the attachment of such lien, sale, and execution of the deed thereunder, provided all the work was performed and material furnished under the original contract.

"*Seventh.* The court declares the law to be that the sheriff's deed from H. C. Bettes & Sons, dated October 31st, 1881, and filed for record November 9th, 1881, to the defendants Orr and Cockrell, does not operate to convey any right, title, interest, or estate, that the defendant, Ira J. Bettes, may have had at the date thereof in the property in said deed described."

The court rendered judgment against the defendant, Ira J. Bettes, for the amount of the debt and interest, but found the issues for the defendants, Orr and Cockrell. From this judgment the plaintiff prosecutes this appeal.

SAMUEL P. SPARKS, for the appellant.

I. The plaintiff established by uncontradicted evidence that the material was furnished and labor performed at intervals from September, 1880, to February, 1882, *under one contract*, and that a period of six months at no time intervened between the different acts of performance.—

*Squires* v. *Fithian*, 27 Mo. 134. The plaintiff had **six** months from the date of the last performance under his contract in which to file notice of his lien.—*Austin* v. *Stine*, 9 Mo. 558; *Carson* v. *Steamboat Hillman*, 16 Mo. 256.

II. The lien is given on *repairs* on an old as well as on the erection of a new structure.—*Reilly* v. *Hudson*, 62 Mo. 383.

III. The fifth and sixth declarations of law asked by plaintiff and *refused* by the court, declared, in effect, that the sheriff's deed, based upon judgments rendered after plaintiff had entered upon the performance of his contract, would not defeat his lien for labor performed and material furnished under that contract after such sales, and this was error.—Houck on Liens, sect. 142, p. 46, (ed. 1867); Rev. Stat., sect. 3174; *Reilly* v. *Hudson*, 62 Mo. 383; *Douglas* v. *St. Louis Zinc Co.*, 56 Mo. 388. Plaintiff's seventh declaration of law was improperly refused. A deed conveying the interest of H. C. Bettes & Sons, could not operate to convey the interest of Ira J. Bettes.

IV. The finding of the court that the last item for labor or material in plaintiff's account (proved to be prior to sale to defendants Orr and Cockrell), was not furnished within six months prior to the date of the filing of account for lien by plaintiff was erroneous, since the transfer could not in any way impair the right of plaintiff to his lien.

O. L. HOUTS, for the respondents.

I. In *Reilly* v. *Hudson* (62 Mo. 383) the purchaser took his title *with notice*, and *after* the lien was filed. Sections *3174 and 3178*, Rev. Stat., only prefer the lien to *incumbrances*—nothing is said about *purchasers without notice*. *This question* has never before been before this court. It is nowhere maintained that upon filing of the lien it dates back to the commencement of the building as against a purchaser in good faith for valuable consideration without notice. Cases referred to by appellant are not like this.

II. The improvements made by plaintiff in this case are separate and distinct in their nature, and not of such a character as to impart notice of each other, and each was finished separately.

III. The statute refers to the *commencement* of improvements, and means plainly that a contract must be in existence with the real owners, *at the time* when each separate or distinct improvement or job of work was commenced. But *prior* liens cut out all claims for improvements commenced subsequently to them.—*Crandall* v. *Cooper*, 62 Mo. 478.

IV. Plaintiff's seventh instruction was properly refused, as the court could not say that this deed conveyed no title, when a correct deed was before it showing there had been a misrecital in former deed. This deed was not thereby rendered invalid.—Crooker, Sheriffs, sect. 548; *Thornton* v. *Neeskammon*, 48 Mo. 219. There was no evidence to support fifth instruction.—*Strain* v. *Murphy*, 55 Mo. 451; and 49 Mo. 337.

V. The continuity of the contract was broken by the purchase of the property.—*Allen* v. *Mining Co.*, 73 Mo. 688; *Livermore* v. *Wright*, 33 Mo. 31; *Kuhlman* v. *Schull*, 35 Mo. 142. When the ownership changes the contract ends, but is good against property in the hands of the purchaser, provided the lien is filed within the statutory period.

VI. The paper filed for the purpose of obtaining a lien is insufficient as not giving the true ownership, nor when the contract was made, nor when it was to be performed, nor of what was done and the items, but is *on its face* not one continuous contract, but a series of balances on separate and distinct jobs lumped together.— Kneeland on Liens, sect. 190; *Livermore* v. *Wright, supra.*

Opinion by PHILIPS, P. J.

1. Our statute concerning mechanic's liens is quite broad and explicit. By section 3172, Revised Statutes, the lien is given to "every mechanic or other person, who shall do or perform any work or labor upon, or furnish any materials

—for any building, erection or improvements upon said lands, or for repairing the same under or by virtue of any contract with the owner or proprietor thereof, or his agents, etc., etc." From which it appears that the lien is given for repairs as well as for erecting a building, etc.—*Reilly* v. *Hudson et al.*, 62 Mo. 387; *Allen & Co.* v. *Frument M. & S. Co.*, 73 Mo. 692.

By section 3174 the lien is made to attach to the buildings, erections or improvements for which they were furnished or the work done, in preference to any prior lien, or incumbrance, or mortgage, upon the land upon which said buildings, erections, improvements, etc., have been erected or put. And section 3178 expressly prefers such lien "to all other incumbrances which may be attached to or upon such building, etc., or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements."

When the work in controversy was begun, in September, 1880, there does not appear to have been any incumbrance on the property in question. The incumbrances under which the defendants, Orr and Cockrell, claim title, did not attach until March, 1881, the date of the judgments under which they bought at sheriff's sale.

As to the items of the account then accrued, the judgment lienors were merely subsequent incumbrancers; as such their liens would be postponed to that of the mechanic and material man. But it is insisted at this point, by Orr and Cockrell, that the plaintiff has lost the benefit of his priority because he failed to file the account for his lien within six month after the indebtedness accrued. It would seem that such was the view entertained by the trial court, for the judgment recites that the plaintiff was not entitled to his lien against Orr and Cockrell, "for the reason that the last item for material and labor in his account, proved by the evidence prior to the sale to defendants Orr and Cockrell, was not furnished within six months prior to the date of the filing of account for lien by plaintiff." Plaintiff's answer, however, to this is, that his contract with Bettos, the benefi-

cial owner.of the property, made in August, 1880, before the work begun, was an entire, continuing contract, covering all the items embraced in the account; and, therefore, he had six months from date of the last item within which to file his entire account. The last item of the account was in February, 1882, and the account was duly filed on the 28th day of March, 1882.

In the case of a running account, under a continuous contract, the law is well settled that the mechanic, etc., has six months from the date of the last item within which to file his account and perfect his lien.—*Stine* v. *Austin*, 9 Mo. 258–9; *Carson et al.* v. *Steamboat*, 16 Mo. 256; *Squires* v. *Fithian, Adm'r*, 27 Mo. 134.

If, as a matter of fact, the several items of the account were for work, etc., under separate contracts between Page and Bettes, Page should have filed his account within six months from the date of the item under each independent contract.—*Livermore* v. *Wright*, 33 Mo. 31.

So the practical question, in this connection, first to be determined, is, were all the items of work, etc., contained in this account done under one entire contract? This is necessarily a mixed question of law and fact. The jury are to find what the contract in fact was; and whether the contract thus found is entire and continuing, is a question of law for the court.—Phillips, Mech. Liens, sect. 325. So, whether the work as done was performed under an entire contract, or under distinct contracts, is necessarily a question for the jury, and the court cannot withdraw this inquiry from the jury.—*Ib.*, sect. 326.

It often becomes a question of much nicety and difficulty to determine whether all the items of an account occurred under one entire contract, or should be taken as founded on separate express or implied undertakings. "Where work, distinct in its nature, is performed at different times, the law supposes it to have been performed under distinct engagements, as where the work at one time is for building and at another time for repairing. So where two distinct contracts are in fact made, as for different parts of the work, the work done under each

contract must be considered as entire of itself. But where work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be considered as a unit, or as being but a single contract."—Phil. on Mech. Liens, sect. 229. In *Hazard Powder Co.* v. *Loomis* (2 Disnay (Cin.) 544), under a statute like ours in the particular under consideration, where the builder began to furnish material towards the erection or repair of the building, without any specific agreement as to the amount of material or time of completion, but under a reasonable expectation that further material and work would be required of him to complete his undertaking, and he was afterwards called upon from time to time to complete the same, it was held that he was entitled to his lien as under an entire contract, and that no part of his claim would be postponed in favor of a subsequent mortgage or incumbrance.

It may be further conceded, on most respectable authority, that where long intervals intervene between dates in an account like this for repairs, where there is not any immediate dependence of the parts, the presumption would be that they were based on independent contracts.

But this is a mere presumption, which would of course give way when the truth appeared to the contrary. It is, after all, a matter of contract.

In *Truesch et al.* v. *Shyrock et al.* (51 Md. 162), the defendant made request of the trial court to exclude from the consideration of the jury certain items in the account because they were deemed as occurring at unreasonably long intervals. The court said: "The question in regard to the nature of the contract, whether it was a continuous one, or whether the materials were furnished under sepa-

rate contracts, were questions for the jury.   If the materials were delivered under a continuous contract, the court had no right to exclude certain items on the ground that they were delivered at long intervals.   Such deliveries were matters for the consideration of the jury, in determining whether the materials were furnished under a continuous contract or under separate contracts with the builder."

In *Holden* v. *Winslow* (18 Pa. St. 160), there was a cessation of over one year after part of the work was done before resumption.   It was held error for the court to take the case from the jury.   "It should have been submitted to the jury whether the work last done was done under the original agreement, without unreasonable delay, and with the consent of the owner, or under a distinct contract."

The case of *Jones* v. *Swan & Co.* (21 Iowa 181) is quite like the one at bar in the particular under consideration. The work was done and materials furnished in repairing old and making new machinery, from time to time, pursuant to a verbal contract, as they might be ordered. "At this time all the items of the bill were not contemplated, but as additions and changes would be made, other orders would be given, plaintiff acting under the same contract, and defendant doing nothing to lead to any other supposition."   The court says: "To entitle the mechanic or builder to a lien, it is not necessary that every item furnished should be contemplated and specifically named at the time of making the contract.   They must be furnished under a contract with the owner or proprietor; but if thus furnished, it makes no difference that the items were charged, from time to time, in the builder's or mechanic's books, in the same manner that he charges his other customers generally.   Nor is it necessary that it should be expressly understood that the artisan is to have a lien for his work and materials. * * * Such lien attaches and shall be preferred to all other liens or incumbrances, which become such subsequent to the commencement of the building, erection or improvement."

The items in the account in the above case extended over a period of two and a half years.—See also *Lamb* v. *Hannerman*, 40 Iowa 41. In *Allen & Co.* v. *The Frument H. & S. Co.* (73 Mo.) the account extended over a longer period than the one at bar, and was for repairs among other things. And the lien prevailed against a subsequent incumbrancer, not, as suggested by respondent, because the subsequent incumbrancer had notice, for no such evidence appears in the case. It is true, one of the counsel in his brief in that case suggests, *arguendo*, that the stockholders had notice. But if that were true, that would not be notice to the corporation. The legal entity of the corporation is quite distinct from the individual members composing its stockholders. If the evidence on behalf of the plaintiff, introduced at the trial of the cause, is to be credited, it presents quite clearly the case of an entire contract. Bettes testified, *inter alia,* that the contract was, that the plaintiff was to repair the building—generally to overhaul it—to do the labor and furnish the material. No time was specified for its completion. "Our contract was that he was to make all necessary repairs." The plaintiff testified that his contract was to overhaul the building generally, and to do other things to it as he (Bettes) should need from time to time, specifying a large number of articles embraced in the account. "Before I made the contract with Bettes, he asked me to go and see if a new foundation could be put in. I said yes, and he said, go ahead and do whatever is necessary to make it comfortable to live in. I told him I could not do it all at once, and he did not require it. I did the work of raising the foundation at first, and then the other work as I could." He further stated on cross-examination: "The new foundation was spoken of, the porch, the windows, the flues, the window blinds. I told him then it would not suit me to take the contract to do all the repairs necessary if he should require it done at once. He said he would not require that. He wanted the foundation put in and the house fixed so he could move into it; then I could take my time

in regard to finishing it up and do it as I might find leisure."

We think the evidence showed an entire contract, and one sufficiently explicit to entitle the plaintiff to his lien for work and material as claimed, so far as Bettes is concerned at least.

2. Respondents insist, however, that the rendition of the judgments against Bettes in March, 1881, under which they subsequently bought, should be held to have so interrupted the contract for repairs as not to entitle plaintiff to any lien not filed within six months thereafter. This is not tenable. The judgments merely gave the judgment creditors liens on the land and its appurtenances for the debts. As such they were subsequent incumbrancers after the commencement of the work, as declared under said section 3178, Revised Statutes.

3. It is next insisted by respondents, that at least from the day of the sale under execution, at which they bought, the continuity of the contract between Bettes and Page was broken, so that unless Page had filed his lien within six months from the date of the last item anterior thereto, he had no lien at all; and that as to the items occurring subsequent to the date of the sale, he could have no lien as against them with or without such filing of the account. It is important in this connection to settle what is the date of the execution sale and deed thereunder. The first deed in evidence from the sheriff recites a sale made on the 28th day of October, 1881. This deed was executed by the sheriff October 31, and acknowledged November 1st, 1881, and recorded November 9th following. It recites that the judgments were against "H. C. Bettes & Sons," without more.

We think the objection made by appellant to this deed was well taken, and it should have been excluded by the court. It was not good on its face to convey the interest off Ira J. Bettes, who, as the evidence showed, was the equitable owner of the property. Nor did the evidence show that the legal title was in H. C. Bettes & Sons. The appellants themselves seem to have mistrusted the efficacy

of this deed, for the other deed in evidence shows that they took from this same sheriff a subsequent deed for this property under the same judgments, recited in the second deed to have been rendered against "H. C. Bettes, William H. Bettes and Ira C. Bettes." Both of these recitals cannot be true.

This last deed was acknowledged on the 18th day of February, 1882, and recorded March 8th, 1882. Until acknowledged it was not the deed of the sheriff for any purpose. When, then, did Orr and Cockrell, become the purchasers of this property as against Page the lienor?

Sheriff's sales are within the statute of frauds, and until a deed is made the fee is in the debtor.—*Alexander v. Merrill*, 9 Mo. 514. "A title to land purchased at sheriff's sale can only pass by the purchaser obtaining a deed."—*Leach* v. *Koening*, 55 Mo. 543. The doctrine of relation makes the sheriff's deed operative and effective from the date of the sale. But this doctrine is a fiction of law, and is only recognized by the courts for the purpose of justice. It is never permitted to operate except between parties, privies and purchasers with notice. It never operates against a stranger without notice.—*Leach v. Koening, supra;* and *Alexander v. Merrill, supra.* Page was a stranger to the judgments and all the subsequent proceedings thereunder. Mere constructive notice does not apply to a case like this. "Until the money is paid and the deed is made the bidder gets nothing."— *Leach* v. *Koening, supra.* How could the plaintiff know that the defendant would ever pay the purchase money or obtain a deed? Until the deed was made the fee remained in the debtor, and, therefore, the judgments, and whatever was done under them, but constituted incumbrances on the property, and being subsequent in time to the commencement of the work by plaintiff on the premises, was, as we have already shown, by express provision of the statute, subordinate to plaintiff's lien.

4. Respondents, with much force of argument, contend that the statute in question should not receive such construction as would enable the artisan to thus prosecute

his work at broken intervals, under an anterior contract, accumulating burdens on the property against the subsequent incumbrancer who could have no record notice of the existence of the mere verbal contract for the repairs, and when there was nothing at the time of the execution sale to indicate that the repairs were incomplete. We might sufficiently answer this by employing the language of Woodard, J., in Hahn's Appeal (39 Pa. St. 413, 414): "It may be said Hahn's lien is established by parol. It must be admitted. But such is the statute. The lien which it creates originates with the beginning of the building, and that is always proved by parol, and never appears of record. All unrecorded liens are necessarily secret, and it is to be regretted that we are compelled to tolerate them, but the benevolent purposes of the mechanic's lien law, it is supposed, are sufficient to justify the departure from the general policy of the laws."

And still more pertinent are the observations of Leonard, J., in *Dubois' Adm'r* v. *Wilson's trustee* (21 Mo. 213). Judge Vories, in *Douglas et al.* v. *St. Louis Zinc Co. et al.* (56 Mo. 388), after construing the statute in question so as to make the mechanic's lien to relate back from the date of filing the account to the time of the commencement of the work, says: "It requires no further contract, consent or agreement on the part of the owner of the buildings or land, or of his assignees, after the commencement of the buildings, to confer a right on the claimant to perfect and enforce his lien against the property. The right is vested in the claimant to file his account and enforce his lien without the consent or concurrence of any one, and, although these things are required by the statute in order to the enforcement of his lien, yet they do not originate the right to the lien, the right growing out of the contract to furnish the material and its use in the building or erection. Therefore when the account is filed, the lien relates back to the commencement of the building, and cannot be cut off or divested by any transfer or assignment of the owner after the building is commenced."

We do not feel called upon, on the facts before, us to consider the effect of the sale of the property under execution on a subsisting contract for repairs made after the mechanic has notice of the sale and deed.

We think the circuit court erred in refusing the fifth and seventh instructions asked by the plaintiff. The sixth instruction, as applied to the state of the proofs, the trial being before the court without a jury, might have been given without injustice. But if the cause should be retried before a jury, it should be reformed.

The jury should be advised that, under the judgments in question, Orr and Cockrell did not become purchasers until they paid the purchase money and the sheriff's deed was executed and delivered; and that such sale and deed would not defeat the mechanic's lien for repairs commenced under a contract anterior to the judgments and prosecuted up to the time of notice of such sale and deed.

It follows that the judgment of the circuit court must be reversed, and the cause remanded for further proceeding in conformity with this opinion. All concur.