BOARD OF ROAD COM'RS OF MONROE COUNTY, MICH., v. KEIL.

In re GARRIGAN BROS. CO.

(Circuit Court of Appeals, Sixth Circuit.  May 6, 1919.)

No. 3235.

1. BANKRUPTCY ⬦455—APPEAL FROM ORDER ON TRUSTEE'S PETITION—LACK OF FINALITY.

No appeal lies from an order of the District Court in bankruptcy overruling objections to the court's jurisdiction of the parties to and the matter set forth in the petition of a trustee in bankruptcy, asking instructions to sue the board of county road commissioners, with which the bankrupt had contracted, for the recovery of damages for breach of the board's original contract with the trustee; such order not being final.

2. BANKRUPTCY ⬦443—PETITION TO REVISE—JURISDICTIONAL ORDER OF DISTRICT COURT.

Under Bankruptcy Act 1898, § 24b (Comp. St. § 9608), the Circuit Court of Appeals will entertain petition to revise order of District Court in bankruptcy, overruling objections to its jurisdiction of the parties to and the matter set forth in the petition of a trustee in bankruptcy for instructions to sue the board of county road commissioners, with which the bankrupt had contracted, for the recovery of damages for breach of the board's original contract with the trustee.

3. BANKRUPTCY ⬦101—JURISDICTION OF BANKRUPT'S PROPERTY.

Where, when the bankruptcy petition was filed, equipment was in possession of bankrupt company, either as owner or lessee, and all parties interested, including the board of road commissioners, with which the bankrupt had contracted, and on whose work the equipment was to be used, recognized the receiver was in possession and control of the equipment, the jurisdiction of the bankruptcy court attached to the equipment, though it was not situated within the district where the proceedings were begun, and the jurisdiction of other courts, not exercised to ripen into actual holding adverse to the bankrupt, was superseded.

4. BANKRUPTCY ⬦293(1)—JURISDICTION OF COURT OVER PROPERTY—AGREEMENT OF CONTRACTOR WITH BANKRUPT.

Where a board of road commissioners, for which the bankrupt company had been doing work, acquired from the receiver in bankruptcy possession and use of the bankrupt's equipment, which it would not otherwise have obtained without litigation, and agreed that, when the work was finished, the equipment should be returned to the bankruptcy court, and to deposit a cash fund as security against loss or damage, if the board refused to return the equipment after it became bound to do so, there was a loss or damage subject to be assessed by the bankruptcy court, implying both the right and power of the court to determine when the duty to return might exist.

5. BANKRUPTCY ⬦293(4)—JURISDICTION OF DISTRICT COURT—LIABILITY OF BANKRUPT'S CONTRACTOR.

District Court in bankruptcy held without jurisdiction of question of liability of a board of county road commissioners to the bankrupt company, which had been doing road work for the board, and the company's trustee in bankruptcy, under certain contracts whereby the board, of whose liability to the bankrupt under the original contract for the work the court had no jurisdiction, submitted to appear before the referee to make concessions to aid him in deciding whether or not to give the receiver certain instructions, or whether to leave the contract and the bankrupt company's property in the board's hands for completion of the work by it.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition to Revise and Appeal from an Order of the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Petition by the Board of Road Commissioners of Monroe County, Mich., to revise, and appeal from, an order entered on petition of Edwin D. Keil, trustee in bankruptcy of Garrigan Bros. Company, bankrupt. Order directed to be set aside and modified, as indicated in the opinion.

Pursuant to the statutes of that state, there was in Monroe county, Mich., a "board of county road commissioners," charged with certain powers and duties in building highways. It made contracts with the Garrigan Bros. Company, an Ohio corporation, of Toledo, by which the company agreed to build certain miles of road, according to certain plans and specifications, for the total sum of $117,000. The contracts contained the common provision that, in case the company became in default, the board might have the possession and use of all the company's road-building machinery and material, for the purpose of enabling the board to complete the contract. On August 15, 1917, the board declared the company in default, and gave notice of intention to take over the company's equipment and material. At the same time, either the company or the Toledo bank, which claimed to have a mortgage thereon, began to remove the equipment. The board filed a bill in the chancery court of Monroe county, and obtained a preliminary injunction preventing such removal. This case was removed to the United States District Court, at Detroit, where it is still pending. On August 17th, the Toledo bank filed a bill in the last-named court, and obtained a restraining order preventing the board from using the mortgaged property. Three days later the board and the Toledo bank and the company entered into an agreement, in the form of a stipulation, entitled in and filed in both of the Detroit cases, whereby it was agreed that the question of how much was due the company from the board should be arbitrated, and the sum due, if any, paid, and that, if the company did not go on with the work, the board might use the equipment, giving security for loss or damage, for which alone it would be liable. About a month later, upon its voluntary petition, the company was adjudged bankrupt by the United States District Court, at Toledo, and Edwin D. Keil was appointed, first receiver, and later trustee.

The question at once arose whether the receiver should assume and carry on and complete the contract with the board. He appears to have filed with the referee a petition for instructions in this respect, and notice was given to the board that this petition would be heard upon the day fixed. On that day, the board appeared before the referee "specially to object to any proceedings affecting the county roads in Monroe county, * * * excepting permission for the receiver to finish the said roads." The paper filed on behalf of the board further stated that it "did not consent that this court shall retain jurisdiction of any matters affecting said roads which any other court should have full and plenary jurisdiction to determine," and stated that the United States District Court, at Detroit, had such jurisdiction, and insisted that the question of the ownership of the equipment, and the right to its possession and use, the right to make or withhold payments or estimates, and the value of the work done by the company were all questions which, if not settled amicably, must be determined in the Detroit court. The parties then proceeded to negotiate a satisfactory arrangement in order to avoid litigation, and reached the conclusion that the bankrupt's estate and the trustee should not assume or undertake to perform the contract, but that performance should be completed by the board. The board was to employ Mr. Keil as superintendent; his employment was not as trustee, but in his personal capacity. It was further arranged that, in case Mr. Keil and his conduct of the work became unsatisfactory to the board, it might discharge him, in which case it would give 48 hours' time for the trustee to get authority from the bankruptcy court to assume and carry on the contract, lacking which, the board would proceed with the completion under the management of some

one else. It was also agreed that the board should have the possession and use of the equipment until the work was finished, and that, upon completion, the board should pay to the trustee any unexpended balance of the contract price, and should surrender the possession of the equipment to the court; also that the sum of $25,000 should stand deposited by the board with the Monroe State Savings Bank, and be subject to the orders of the bankruptcy court, as security that the board would indemnify the trustee for any loss or damage to the equipment, excepting ordinary wear and tear. It was also agreed that the board and the trustee should file with the court monthly reports showing the progress of the work.

This agreement was reduced to form and entered by the referee as a proceeding before him. After reciting the various appearances for all the parties concerned, this entry proceeds: "After hearing from said parties, the following agreement and order is made." Then follow all the provisions agreed upon, the chief ones of which have been stated. The entry then concludes with the following: "It further appears that the board of county, road commissioners have appeared here to object to the jurisdiction of this court upon any matters connected with its said rights, further than to determine whether or not this court will permit the said trustee to finish the said contracts in the place of said bankrupt, and this order is entered upon the understanding that the said board does not waive any of its objections heretofore filed in this matter. The said board does not consent to submit to the jurisdiction of this court the question of how much, if anything, may be owing to the said bankrupt by virtue of the road contracts referred to, and this order shall be without prejudice to any rights and claims the trustee may have against said board, or to claim that this court has jurisdiction to determine the same, the rights of the parties being in that respect the same as if this order had not been entered, and shall be without prejudice to the rights, claims, and liens of the National Bank of Commerce, and the jurisdiction of this court to determine the same."

Pursuant to this arrangement, work was continued by the board at least part of the time until August, 1918. The trustee then filed with the bankruptcy court his petition, reciting the contract of October 20, 1917, and alleging that the board had failed and neglected to carry on the work as therein contemplated. The petition seems to be upon the theory that the arrangement of October 20, 1917, was an original contract between the board and the trustee, and alleges that by reason of breaches of its contracts by the board before the bankruptcy, and further breaches by the board of the contract of October 20, 1917, "the bankrupt and petitioner have a large claim for damages against" the board. It asks that the trustee should be instructed "by this court to file a petition herein against said board for the recovery of damages." It also asks that the fund deposited in the Monroe County Bank "be now transferred to his direct control." It concludes:

"Wherefore petitioner prays for advice and instructions of the court in the premises, and that he may be relieved from further duty under said order of October 20, 1917, and that he may be directed to remove the equipment of the bankrupt to Lucas county, Ohio, and put the same in condition for sale, and that an order of sale of said equipment may be entered herein; that said Monroe State Savings Bank, of Monroe, Mich., may be ordered to turn over to your petitioner the aforesaid sum of $25,000, or place the same on deposit to the credit of your petitioner in some bank in Lucas county, Ohio; and that petitioner may be authorized to file his petition herein against said board of county road commissioners, seeking damages in the sum of $100,-000; and petitioner further prays that a temporary restraining order may immediately issue, restraining the said board of county road commissioners, their attorneys, agents, employés, and all other persons, firms, and corporations which shall have notice thereof, from in any wise interfering with or preventing your petitioner from taking immediate and exclusive possession and control of all of said equipment and removing the same from its present location and preparing the same for sale."

Upon receiving notice of the proposed hearing of this petition, the board filed objections to the making of any order; the grounds of the objections being that the bankruptcy court had no personal jurisdiction over the board,

which was and had been within the state of Michigan, and which could not be elsewhere sued without its consent, and also because all the property involved was under the jurisdiction and control of the court at Detroit. After hearing, the District Court overruled these objections, finding "that said objections to the jurisdiction of this court are not well taken, and that this court has jurisdiction over the parties and of the matters set forth in said receiver's [sic] petition." The board alleges that this order is erroneous, and seeks review by petition to revise; and it has also brought the same matter here on appeal.

Willis Baldwin, of Monroe, Mich., for petitioner and appellant.

Marshall & Fraser, of Toledo, Ohio, for respondent and appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judge.

DENISON, Circuit Judge (after stating the facts as above). [1, 2] We think it clear that the appeal must be dismissed. There has been no final order from which an appeal could be taken. Nor is any precedent pointed out for entertaining a petition to revise; but, with some hesitation, we conclude that the proceeding is of the character which the statute intends may be reviewed in that form. The petitioner asks instructions that he be directed to commence and prosecute certain litigation. It is objected that the court would have no jurisdiction thereof. The objection is overruled, and, if the order stands, the litigation will be undertaken. It would involve great delay and expense to the parties. Whether there is or is not jurisdiction is a question of law upon the face of the record. It would be most unfortunate to have such litigation prosecuted to the end, only to reach the eventual conclusion that it was all unavailing. We conclude that the order made below, and retaining jurisdiction in order to give such directions to the trustee, is one of those steps in administration which come within the scope of the petition to revise in matter of law provided by Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (Comp. St. § 9608). Gibbons v. Goldsmith (C. C. A. 9) 222 Fed. 826, 828, 138 C. C. A. 252. The statute contains no express limitation to "proceedings" which are final; but we do not intend to hold that we would entertain such a petition in all cases where there had been merely a preliminary declaration of jurisdiction below. The result which we later reach in this case makes such review now advisable. See In re Chotiner (C. C. A. 3) 218 Fed. 813, 134 C. C. A. 501.

[3] The dispute includes two main subjects, and these are separable, or, at least, are capable of separate treatment. One subject is the right to the possession and use of the equipment. The claim of the board is that it was and is entitled to treat this equipment as the property of the company, pledged to the board by the contracts. It is the claim of the bank and of the company that the equipment is the property of a partnership, distinct from the company, and that the company was using it only by permission of the owner. However this may be, we must infer from this record that, when the bankruptcy petition was filed, the equipment was in the possession of the company, either as owner or as lessee, and that, on October 20, 1917, all parties, including the board, recognized that the receiver was in actual possession and

control, unless and except so far as that control was modified by the injunction which had been issued by the Monroe county chancery court. It is clear that the jurisdiction of the bankruptcy court attached at once to property thus possessed by or for the bankrupt, and in spite of the fact that it was not situated within the district where the bankruptcy proceedings were begun, and that the jurisdiction of other courts, which had not been so exercised as to ripen into an actual holding of the property adverse to the bankrupt, was superseded (Babbitt v. Dutcher, 216 U. S. 102, 109, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Fidelity Co. v. Bray, 225 U. S. 205, 225, 32 Sup. Ct. 620, 56 L. Ed. 1055; In re Martin (C. C. A. 6) 193 Fed. 841, 846, 113 C. C. A. 627; Orinoco Co. v. Metzel (C. C. A. 6) 230 Fed. 40, 46, 148 C. C. A. 338; In re Diamond (C. C. A. 6) 259 Fed. 70, —— C. C. A. —— (January 7, 1919). It follows that the filing of this bankruptcy petition and the appointment of a receiver, by an order vesting in him the right to the possession of all the property of the bankrupt. and which expressly directed him to take the custody of all the equipment in question which was in use by the bankrupt in connection with its contracts in Monroe county, gave to the bankruptcy court exclusive jurisdiction to determine the right of the board or any other adverse claimant who should seek to obtain possession of the same equipment. It is not necessary to consider the rights of the Toledo bank, which claimed an adverse possession taken before the filing of the bankruptcy petition, because that bank is fully acquiescing in the jurisdiction of the bankruptcy court.

[4] It further appears that, by this order and agreement of October 20, 1917, the board acquired from the receiver and the bankruptcy court that possession and use of the equipment which it could not otherwise have obtained without litigation. It agreed that, when the whole construction was finished, the equipment should be returned by it to the bankruptcy court. It also agreed that, before it should be entitled to receive the equipment, it should deposit a fund in cash as security against loss or damage to the equipment, and that this fund should be subject to the orders of the bankruptcy court. If the board refused to return the equipment after it became legally bound to do so, there would seem to be a loss or damage subject to be assessed by the bankruptcy court under this provision, and this implies both the right and power of that court to determine when the duty to return might exist. If there were doubt about the original jurisdiction on this subject—although we do not mean to imply that there is—it would be removed by the appearance and participation of the board in this agreement and order of October 20. It results that, in so far as the trustee's petition of August, 1918, sought an order for the return of the equipment or an assessment of damages under the terms of the deposit for security, it presented a matter within the jurisdiction of the court, and that there was no error in proceeding to consider the merits of such application.

[5] The other subject-matter in dispute is the liability of the board to the company and the trustee under the contracts. The board being a resident of Michigan, and the District Court for the Northern Dis-

trict of Ohio not being a court which would have had jurisdiction of an action by the company against the board, and the proposed proceeding not being one to set aside a preference or to recover property fraudulently conveyed, it is clear that the bankruptcy court would have no right to entertain the proposed proceeding against the board, unless the board had lost its right to object. See section 23b, Bankruptcy Act (Comp. St. § 9607). In the arguments here and in the opinion of the trial court such loss or waiver is predicated chiefly upon the order or agreement of October 20, 1917, and the effect of this order in this particular is the vital question.

It is said that an appearance for the purpose of testing jurisdiction over the subject-matter is a waiver of any lack of personal jurisdiction, and that the board, by its appearance at this time before the referee, has subjected itself to this result. It may be assumed that, after an appearance for the purpose of contesting jurisdiction over the subject-matter, just as it is after an appearance to contest the general merits, it is too late to deny any personal privilege of choice of forum; but the rule does not apply here. Although the paper filed with the referee purported to challenge the jurisdiction of the court on the subject-matter named, this challenge must be interpreted with reference to the facts. The District Court for the Northern District of Ohio could hear and decide such a controversy, if the board were properly served within the district; as a court of bankruptcy, circumstances could arise which would give it jurisdiction; the challenge, therefore, whatever its form, was, in the end, a claim that jurisdiction could not be exercised against the consent of the board, and was accompanied by an express refusal to consent beyond a stated limit. Indeed, whether a quasi municipal corporation could consent to be sued in a foreign state is a question which challenges attention. At least, its consent must be clear. The board did not join in submitting to the court any matter of the power of the court to hear the question of liability against it under the contract, nor did it ask or receive the opinion of the court thereon. Its substantial attitude as to the matter was:

"Prior to the bankruptcy, there was a dispute between the bankrupt and us as to our respective rights under the contract. This dispute has taken form in litigation in Michigan. We cannot be sued and we are unwilling to be sued anywhere else, but, as the bankruptcy court has jurisdiction to direct its receiver to assume and carry on the contract, we will attend before the referee, put the situation before him, and make some concessions to aid him in deciding whether or not to give such instructions, or whether to leave the contract and equipment in our hands for completion by us; but it shall be expressly understood that we do not submit ourselves to the jurisdiction of that court with reference to any claim against us for damages under the contract."

We do not know of any principle or precedent which would justify treating such a denial of jurisdiction and express refusal to be sued on that cause of action in this court as being, nevertheless, an admission of jurisdiction and a consent to be sued. It goes without saying that there was no intent on the part of the referee in bankruptcy to mislead the board, but for the trustee and the bankruptcy court to accept whatever benefit there was in the agreement in question, and

259 F.—6

then repudiate the condition upon which that benefit was procured, has the effect of misleading. Language could not be clearer than that employed in the disclaimer. It was expressly provided that, as to the substantial controversy whether anything, and, if so, how much, was owing by the board to the bankrupt, the jurisdiction of the bankruptcy court was denied, "the rights of the parties being the same in this respect as if this order had not been entered"; and we find nothing in any other part of the order inconsistent with this reservation.

The trial court was largely influenced in its conclusion by the thought that the board could not be heard to deny the jurisdiction of the court to enforce the very contract which the board had made with the court through its officer. Just how far the court may have personal jurisdiction over a nonresident to enforce a contract made with its receiver or trustee, which contract has been by both parties submitted to the court for approval, we need not decide. We do not find that the rights sought to be enforced and the wrongs sought to be redressed by the receiver (as to liability) had substantial basis in the contract of October, 1917. This contract made no vital change in the existing rights of the parties. There had already been a breach, and the party guilty thereof was liable to the other party in damages. After the effort to have the receiver assume and carry out the contract failed, the parties then made an arrangement, the sole purpose of which was to minimize the damages in the interest of whichever party might eventually be found liable. In place of the legal rules for determining damages under those circumstances, the parties substituted some voluntary arrangements. Indeed, it is doubtful whether they made any very substantial change in the obligations which the law would or might have imposed. Any breach of this later contract is wholly incidental to the underlying breach. We cannot conceive an assessment of damages for violating the contract of October 20 which would not be inextricably confused with the original liability and the original damages. To permit jurisdiction which might rest upon the enforcement of such an incidental contract to neutralize lack of jurisdiction as to the main underlying question, would be to merge the principal thing in the incidental.

It follows that the bankruptcy court is without jurisdiction to entertain the controversy as to how much is due from one party to the other for damages for breach either of the original contract or of the incidental one of October 20. We do not find this subject and that of the equipment so interdependent that power to hear and decide upon one necessarily includes the other.

The order under review should be set aside, and should be modified as indicated in this opinion. The petitioner will recover costs.