## McGONIGLE v. FOUTCH (two cases).

## A. Y. McDONALD MFG. CO. et al. v. SAME (two cases).

Nos. 9010, 9011, 9092, 9093.

Circuit Court of Appeals, Eighth Circuit.

June 8, 1931.

Arthur N. Adams, of Kansas City, Mo., for appellant D. S. McGonigle.

Goodwin Creason, of Kansas City, Mo. (W. S. McClintock, Arthur L. Quant, F. K. Ferguson, James A. Reed, F. A. Fratcher, George K. Brasher, Joseph F. Keirnan, John S. Wright, Whitson Rogers, John T. Harding, David A. Murphy, R. C. Tucker, August F. Behrendt, Frank P. Walsh, James P. Aylward, C. A. Capron, John M. Cleary, Raymond G. Barnett, and Maurice O'Sullivan, all of Kansas City, Mo., on the brief), for appellants A. Y. McDonald Mfg. Co. et al.

James B. Nourse, of Kansas City, Mo. (Glen C. Weatherby, of Kansas City, Mo., for petitioning creditors, and Milford W. Rider, of Kansas City, Mo., on the brief), for appellee.

Arthur Miller, of Kansas City, Mo., for bankrupt.

Charles W. German, of Kansas City, Mo., for creditors.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge.

These four cases are appeals from the order of the District Court for the Western District of Missouri overruling exceptions to orders of the referee in the matter of Kelley Development Company, a corporation, bankrupt. The orders in question are of date June 4, 1930. So far as a determination of the issues presented by these appeals are concerned, the orders complained of may be deemed to have arisen upon the following state of facts:

On or about May 1, 1929, the Kelley Development Company, as owner, began the erection of an eleven-story structure on lots 1, 2, 3, 4, 20, 21, and 22, all in block No. 7 of Hyde Park, an addition to Kansas City, Jackson county, Mo. The building in question, a twin apartment or hotel building, called the Chief, was to be erected in part by the owners and in part under one entire gen-

BOOTH, Circuit Judge, dissenting in part.

eral contract by the Fleming-Gilchrist Construction Company, a corporation. One G. A. Oxler was a general contractor for the furnishing of all the plumbing and heating materials to be used in the building, and appellant A. Y. McDonald Manufacturing Company is a subcontractor under Oxler, and furnished plumbing and heating material at his special instance and request. It is unnecessary for the purposes of this opinion to name other mechanic's lien-claimants. Work on the Chief began May 1, 1929, and labor was performed and materials were furnished beginning on that date. Work ceased on or about October 17, 1929. The lien claim of Fleming-Gilchrist Construction Company states that the last work performed and the last materials furnished by it was performed and were furnished on that date.

Section 3161 of the Missouri mechanic's lien law (Rev. St. Mo. 1929) provides as follows: "It shall be the duty of every original contractor within six months, and every journeyman and day laborer within sixty days, and every other person seeking to obtain the benefit of the provisions of this article within four months, after the indebtedness shall have accrued, to file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements," etc.

The lien account of appellant McDonald Manufacturing Company was filed November 13, 1929; that of another lien claimant, on December 13, 1929. The remaining accounts were filed on various dates up to and including April 4, 1930. The claim of Fleming-Gilchrist Construction Company was filed January 20, 1930; the petition in bankruptcy, April 7, 1930. All actions to enforce liens shall be commenced within ninety days after the filing of the lien account. Rev. St. Mo. 1929, § 3172. The nature of the action, such as that under consideration, and the procedure in the courts of the state, are thus described in the latest revision of the Statutes of Missouri, R. S. Mo. 1929:

"Sec. 3180. Liens may be adjudicated, how.—Any and all liens in this article provided for may be adjudicated and determined and the rights of all parties interested in the same and in the property and any of the property against which the same is claimed may be adjudicated, determined and enforced in one action which may be brought by any such lien claimant after the statement for such lien is filed in the office of the clerk of court, as herein provided, or such action may be brought by any owner or lessee of the property or any of it to be affected, or mortgagee or holder of any other encumbrance thereon. Such action shall be an equitable action for the purpose of determining the various rights, interests and liens of the various mechanics' lien claimants and claimants of other liens and owner of any interest in or leasehold upon said property and for enforcing the rights of any and all such persons in, to or against the property, being the lands and buildings and either of the same and for sale of such property, land and buildings or either of the same and for marshalling and distribution of the proceeds thereof among the parties according to their respective legal and equitable rights therein. Such action shall be an equitable action for the purpose of determining, establishing and enforcing the various and respective rights of the parties thereto and for the purpose of marshalling, applying and distributing the proceeds of the sale of such property that may be ordered and decreed in said action.

"Sec. 3181. Who may be made party to action.—All persons claiming any lien or encumbrance upon, and all persons having any rights in or against and all owners and lessees of said property to be affected and any of it, all as may be disclosed by the proper public records, shall be made parties to said action and parties whose interests are divers may join as plaintiffs therein, but if they do not join as plaintiffs, then they shall be made defendants. Any person, lien claimant or other having any rights in, to, against or upon said property and any of it whose rights are not disclosed at the time of bringing said action by the proper record, shall be bound by the proceedings, orders and judgments in said actions, but any such person shall be entitled upon application to the court to be made a party to said action at any time before final disposition by the final judgment of the court therein of the proceeds of said property and shall be entitled according to their respective rights to participate in the proceeds of the sale of such property and any of it, as the same may be thereafter received or then remain under the jurisdiction of the court. If at the commencement of said action any person whose rights are disclosed by the record is omitted as a party, he may thereafter be made party to said action either upon his own application or upon the application of any other party to said action or by the court of its own motion. If any

party to said action shall die or cease to exist during the pendency of said action before the judgment or order of sale therein of said property, then the proper representatives, either administrator or other proper successor in right, shall be substituted by order of the court upon motion and notice of motion without formal revivor of said action."

This equitable action shall not apply when there is only one mechanic's lien claimed against the property (section 3182); but after the action is commenced, in cases in which it does apply, it is exclusive of other remedies for enforcement (section 3186), "and all other suits that may have been brought on any mechanic's lien claim or demand shall be stayed and no further prosecuted, and the parties in any such other suit shall be made parties to such equitable action as in the foregoing sections provided, and any costs rightfully accrued in behalf of any lien claimant in any such other action shall be and become a part of the lien claim of such party. After the institution of such equitable action no separate suit shall be brought upon any mechanic's lien or claim against said property, or any of it, but the rights of all persons shall be adjusted, adjudicated and enforced in such equitable suit." Section 3183.

January 23, 1930, Fleming-Gilchrist Construction Company filed in the circuit court of Jackson county, Mo., at Kansas City, the equitable action provided for the foreclosure of mechanic's liens. All the other lien claimants were made parties, and all duly became impleaded as by law provided. Appellant McGonigle, mortgagee, was also made a party and served. This appellant is the owner of a note in the sum of $150,000, and of the deed of trust securing the same. This deed of trust was executed November 17, 1925, and filed for record November 20, 1925, and covers all the property hereinabove described. In this proceeding, no attack is made upon the validity of this deed, nor of the indebtedness thereby secured. It was in default under its terms on and before March 20, 1930. On that date, McGonigle filed his answer in the Fleming-Gilchrist case in the state court, asserting the priority of his mortgage lien, and asking to be dismissed with his costs. March 21, 1930, McGonigle began advertising the property for sale under the provisions of his deed of trust. That sale was fixed for April 17, 1930, and on that date was enjoined by the bankruptcy court at the instance of the petitioning creditors. May 23, 1930, appellant McGonigle filed an amended answer and cross-petition in the state court, wherein he prayed the foreclosure of his mortgage lien in that jurisdiction, and for all equitable relief. The hearing of the Fleming-Gilchrist Construction Company's equitable suit for enforcement of the mechanic's liens in the state court was set for May 23, 1930. The trial proceeded on that date, and, being unfinished, was adjourned until the following day. Meantime, appellee had been duly appointed and had qualified as trustee for the bankrupt's estate. May 13, 1930, he petitioned for the granting of an order requiring appellants and all interested parties to show cause why the property should not be sold free and clear of incumbrances and liens in the bankruptcy court, and the liens and incumbrances be transferred from the property to the proceeds of sale. May 24, 1930, the referee granted this petition of the trustee and ordered that appellants and all respondents named in said petition "their agents, servants, employees and attorneys shall be and each of them are hereby jointly and severally restrained from further proceeding in any attempt to fix and determine liens or claims or from instituting of suits for the disposition of properties and assets to which the trustee in bankruptcy might be entitled, or from any attempt to fix and establish claims in or upon any of the properties of which the trustee in bankruptcy has possession and control."

Appellants duly filed their pleas, setting up that the "mechanics' lien foreclosure suit was commenced, and the jurisdiction of said Circuit Court in such equitable foreclosure suit attached to the above described real estate and all improvements thereon, and to all of it, and to all the above named parties, prior to the commencement of this proceeding in bankruptcy," and praying that the restraining order entered by the referee May 24, 1930, and the trustee's application for show cause order filed May 13, 1930, "be set aside, vacated and held for naught for want of jurisdiction of this court in bankruptcy to make the same, or grant the relief prayed in such application." On hearing, the referee overruled the pleas to the jurisdiction. The order overruling the plea of McGonigle contained this recital: "The court finds that this Bankruptcy Court has jurisdiction and authority to enjoin the foreclosure of the deed of trust set forth in the pleadings of D. S. McGonigle filed in this cause, and the plea of said D. S. McGonigle to the jurisdiction of this court is hereby denied and said restraint

is hereby continued until the matter may be fully and adequately heard by this court."

The order overruling the plea of the Fleming-Gilchrist Construction Company closed as follows:

"The court finds that it does have jurisdiction to hear and determine the matters raised by the issues in this cause and that the said several pleas to the jurisdiction of this court by respondent should be and are hereby overruled and denied, to which ruling of the court the respondents and each of them then and there severally duly excepted and still except.

"It is, by the undersigned referee in bankruptcy, further ordered that the return date of the restraining order aforesaid made by this court on May 24th, 1930, returnable June 12th, 1930, is modified, so that said restraining order will not come up for hearing on said date, but shall be and remain in full force and effect until the further order of the undersigned referee in bankruptcy, to which order of the court the respondents and each of them then and there severally duly excepted and still except.

"It is further ordered that the respondents be and are given until and including June 9th, 1930, to file such responses to the said citations heretofore issued, or such other pleas, as they or any of them may desire.

"Dated June 4th, 1930."

The referee found that there was in the property a substantial equity over and above the mortgage and the mechanic's liens filed. On petition for review, the District Court, considering itself bound by the decision of this court in First Savings Bank & Trust Co. v. Butler, 282 F. 866, overruled the exceptions to these orders of the referee. These appeals followed.

This recital is found in the brief of McDonald Manufacturing Company: "Being uncertain as to proper mode of appeal, such appeals have all been taken both by orders of the lower court and this appellate court, resulting in four cases docketed on these appeals, as appear in the caption of transcript of record herein."

Reference is made to section 24b, Bankr. Act, as amended by Act May 27, 1926, § 9 (44 Stat. 664, 11 USCA § 47(b). This controversy is not one of the cases mentioned in section 25, Bankr. Act, as amended by Act May 27, 1926, § 10 (44 Stat. 665 [11 USCA § 48]), and, therefore, did not require allowance by this court.

Appellants urge that a referee in bankruptcy is without jurisdiction to restrain the prosecution of a proceeding in a state court; that such restraining order, in a proper case, can be issued only by the judge. We think this is a correct statement of the law. General Order No. XII, par. 3 (11 USCA § 53); Gatell v. Millian (C. C. A. 1) 2 F.(2d) 365. But appellants took these orders, upon petition for review, to the district judge, by whom they were affirmed, thereby becoming, in effect, his orders. The point is, therefore, without substance in this appeal. In re Benjamin (D. C.) 140 F. 320; In re Roger Brown & Co. (C. C. A. 5) 196 F. 758, 762.

It is next suggested, though not insisted upon by counsel, that the orders, being temporary in their nature, involving primarily the overruling of pleas to the jurisdiction, are not final and, therefore, not appealable. It is ordinarily true that an order of the District Court sustaining the referee's decision that the bankruptcy court has jurisdiction is not an appealable order, where there is no trial on the merits. Pearson et al. v. Higgins (C. C. A. 9) 34 F.(2d) 27; Board of Road Commissioners of Monroe County, Mich., v. Keil (C. C. A. 6) 259 F. 76. However, section 129 of the Judicial Code (28 USCA § 227) provides that "where, upon a hearing in a district court, or by a judge thereof, * * * an injunction is granted, continued, modified, refused, or dissolved by an interlocutory order or decree, or an application to dissolve or modify an injunction is refused, * * * an appeal may be taken from such interlocutory order or decree." The Court of Appeals for the Sixth Circuit (O'Dell v. Boyden, 150 F. 731, 10 Ann. Cas. 239), holds that such interlocutory order by a court of bankruptcy, which is not one in a mere proceeding in bankruptcy, is reviewable by appeal, where the final decree therein would be, notwithstanding the jurisdiction of the District Court to grant such injunction is involved. Bothwell v. Fitzgerald (C. C. A. 9) 219 F. 408, holds such orders to be controversies arising in bankruptcy proceedings, and, as such, appealable. In the instant case, the referee, upon petition of trustee, issued a show cause order that appellant be "enjoined and restrained" from further proceedings in the state court, and fixed June 12, 1930, as the date on which appellants might show cause, "if any, as to why the said order as herein entered shall not become permanent, and shall not be merged in such order as the court may make, etc." This order was promptly challenged by pleas to the jurisdic-

tion, in which it was prayed that this restraining order be dissolved. Upon these pleas, a full hearing was held on May 27, 1930, as witness the following recital in the record respecting the plea of appellant McGonigle: "Now, on this day there came on for hearing the restraining order issued May 24, 1930, and the plea of D. S. McGonigle and Arthur N. Adams, said plea containing an allegation or plea denying the jurisdiction of this court to restrain them from proceeding further under their deed of trust to foreclose same; evidence having been submitted by the respondents and on behalf of the Trustee in Bankruptcy; the Court having heard the arguments of counsel and the presentation of the law; all parties having been given a full and complete opportunity of having been fully and adequately heard, all issues having been presented to the court."

Then follows the finding by the referee of authority to "enjoin," as hereinabove set out. It was then ordered that the pleas of appellants be overruled; that the restraining order theretofore issued be so modified that it should not come up for further hearing on June 12, 1930, but "should be and remain in full force and effect until the further order of the undersigned referee in bankruptcy." On review, exceptions by appellants were overruled by the court, and the orders of the referee were thus adopted and continued in force. We think this order of the District Court is appealable under section 129 of the Judicial Code.

"Conceding that a restraining order granted without a hearing is not ordinarily appealable, yet a restraining order which is granted, or sustained, or denied after a hearing of the parties, and which in effect and in everything but name, is a temporary injunction, falls within the evident meaning of the statute, and is reviewable by appeal, and the orders in question were of that character." Western Union Telegraph Co. v. United States & M. T. Co. (C. C. A. 8) 221 F. 545, 553; Field v. Kansas City Refining Co. (C. C. A. 8) 296 F. 800.

The crucial question is, Had the bankruptcy court jurisdiction, in the situation here presented, to stay the proceedings in the circuit court of Jackson county, Mo., and to draw to itself the administration of the mortgage and mechanic's liens in process of foreclosure and enforcement in the state court? This question has, we think, received definite answer in the recent opinion of the Supreme Court in Straton et al. v. New, Jr., 51 S. Ct. 465, 466, 75 L. Ed. ——, April 20,

1931. In that case, the following question was certified to the Supreme Court by the Circuit Court of Appeals for the Fourth Circuit [49 F.(2d) 869]: "Where creditors have obtained and docketed judgments constituting liens on the real estate of defendant, and have instituted a creditors' suit in a state court to marshal and enforce the liens and sell the real estate subject thereto, does the bankruptcy of defendant occurring more than four months after the institution of the creditors' suit oust the state court of jurisdiction, or vest in the court of bankruptcy power to enjoin further proceedings in the state court?"

It appears that April 11, 1927, one Alley had obtained a judgment against a coal company in a court of West Virginia. This was docketed May 5, 1927, and thus became a lien upon the real estate of the coal company. In West Virginia, the debtor's real estate cannot be sold under execution. The judgment creditor must resort, for the enforcement of his judgment, to an equitable proceeding such as is described in the certificate to the Supreme Court above set out. Accordingly, February 20, 1928, Alley filed in the same state court a judgment creditors' suit against the coal company, making parties thereto all creditors having liens against the real estate. He prayed that the liens and assets be marshaled, the real estate sold, and the proceeds distributed among the lien holders according to their respective rights. The case being at issue, commissioners were appointed at the July term, 1928, to make a sale of the property. August 4, 1928, the coal company filed its voluntary petition in bankruptcy. October 11, the District Court, for the Southern District of West Virginia, entered its order in the bankruptcy of the coal company enjoining the commissioners of the state court from proceeding further in carrying out its order of sale.

In answering the certified question in the negative, Mr. Justice Roberts announced a number of propositions pertinent to the determination of the case at bar. The exclusive jurisdiction of the bankruptcy court, after the filing of the petition in bankruptcy, and before that of any other court has attached, over the settlement and distribution of the bankrupt's estate is reasserted, in that no liens can thereafter be obtained nor proceedings be instituted in other courts to reach the property. Thereafter, though a lien be not discharged in bankruptcy, its owner may not institute proceedings in a state court to enforce it, without the bankruptcy court's

permission. Liens acquired by legal proceedings, more than four months before the petition in bankruptcy is filed, are preserved from the operation of the law, for that law "voids only liens obtained by legal proceedings within that period. It has consequently been held that those acquired earlier, if valid under state law, are preserved, and will be accorded priority by the bankruptcy court in distribution of the estate, in accordance with applicable local law."

The following language in Globe Bank v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583, is quoted with approval: "The difference, having the provisions of the act in view, between the beginning of a proceeding to assert liens that existed more than four months before the filing of the petition in bankruptcy, and the attempt to create them by attachment and other proceedings within four months, has been recognized in decisions of this court"—citing Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122.

The trustee in bankruptcy may, of course, intervene in suits instituted prior to the filing of a petition in bankruptcy to protect the interests of the estate. The broad purport of the decision in the Straton Case is thus embodied in the closing paragraph of the opinion: "Most of the cases cited by the appellees to the effect that the initiation of bankruptcy proceedings confers on the district court jurisdiction to enjoin pending suits in state courts deal with the situation where a lien was acquired within four months of the filing of the petition, or where, after the filing of the petition an action was begun to enforce a lien valid in bankruptcy. As heretofore noted, there are a few cases which have held that the bankruptcy court may enjoin proceedings, brought prior to the filing of the petition, to enforce valid liens which are more than four months old at the date of bankruptcy; but these cases are contrary to the decisions of this Court and to the great weight of federal authority."

In as much as the equitable action to foreclose the mechanic's liens was brought prior to the filing of the petition in bankruptcy, it remains to consider whether that equitable action was brought to enforce valid liens which were more than four months old at the date of the bankruptcy. The nature of a Missouri mechanic's lien is clearly defined in the decisions of the appellate courts of that state: "The right of a mechanic or material man against property subject to a mechanic's lien commences at the time the building is commenced, and the labor or materials are furnished; and for all beneficial purposes the lien commences from that date, and while the claimant cannot enforce his lien against the property until he has complied with the provisions of the statute, still his right to the lien exists from the time that his work and materials go into the building. When the account is filed, the lien relates back to the commencement of the building, and cannot be cut off or divested by any transfer or assignment of the owner after the building is commenced." Douglas, Jr. v. St. Louis Zinc Co., 56 Mo. 388.

In Reilly v. Hudson, 62 Mo. 383, the nature of the controversy and the holding of the Missouri Supreme Court is thus stated in the syllabus: "Where the owner of a house had a range erected therein, which became a fixture, and afterwards gave to an outside party a deed of trust on the premises, the purchaser, under a sale of the property made to satisfy a mechanic's lien filed by the range builder, would hold the title to the house as against a purchaser under the mortgage, although the lien was filed subsequent to the mortgage. The mechanic's lien related back to the time of commencing the work on the range, and superseded the lien of the mortgage."

In the opinion, the court, speaking through Judge Sherwood, said: "The lien given by the statute attaches as soon as the work is begun (Houck Liens, § 157), and when made perfect in the mode pointed out by law, has preference to any prior lien on the land on which the improvements are put."

In Holland v. Cunliff, 96 Mo. App. 67, 76, 69 S. W. 737, 739, the court said: "As a lien of this nature does not originate in legal proceedings, it is not released by virtue of the procedure under the bankrupt act"—citing In re Emslie (D. C.) 98 F. 716, 719.

In the latter case, discussing the mechanic's lien law of Missouri, among those of other states named, the court said: "* * * a lien is created directly by the statute itself from the time the building is commenced or the work or materials furnished, and from the very act of doing the work, without any further act or proceeding whatever on the part of the lienor. A subsequent notice of the lien is, indeed, required to be filed in those states; but that is not for the purpose of creating the lien, but only to prevent its loss afterwards, and to give notice of it to the public. The lien itself, under that system, exists anterior to the notice and independently of it."

What has been declared in the foregoing decisions is the well-settled law in Missouri (Riverside Lumber Company v. Schafer, 251 Mo. 539, 548, 158 S. W. 340; Langdon v. Kleeman, 278 Mo. 236, 241, 211 S. W. 877), and is in harmony with the federal rule. In Kemp Lumber Company v. Howard, 237 F. 574, 577, this court, speaking through the late Judge Sanborn, said: "Mechanics' liens are not liens created by or obtained in or pursuant to any suit or proceeding at law or in equity. Nor are they liens obtained through legal proceedings. They are liens created by statute, and by the act of the lienholders pursuant to the statute, without suits or legal proceedings, and the paragraphs of the bankruptcy law cited are inapplicable to them." Bankr. Act, § 67c to § 67f, 11 USCA § 107, subds. c–f.

See, also, Eggleston v. Birmingham Purchasing Company (C. C. A. 5) 15 F.(2d) 529. By analogy, the following holding in Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122, is pertinent: "While the lien created by a judgment creditors' bill is contingent in the sense that it may possibly be defeated by the event of the suit, it is in itself, and, so long as it exists, a charge, a specific lien, on the assets, not subject to being divested save by payment of the judgment sought to be collected, and a judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the bankruptcy statute which is plainly confined to judgments creating liens." Compare Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128; Globe Bank v. Martin, 236 U. S. 288, 299, 301, 35 S. Ct. 377, 59 L. Ed. 583; and Straton v. New, Jr., supra.

From the foregoing, it clearly appears that the mechanic's liens sought to be enforced are apparently valid liens which were more than four months old when the petition in bankruptcy was filed. The filing of the lien accounts was but a step in the perfection of a valid inchoate lien already existing by virtue of the work done and materials furnished. The filing of this account within the four months period is, therefore, unimportant; but at least two of the lien accounts were filed more than four months prior to the petition in bankruptcy, thus insuring the jurisdiction of the state court in any view. The equitable action to establish the liens and insure their ultimate satisfaction is an enforcement action pure and simple. It creates no lien within the meaning of the bankruptcy act. It is true that the liens, or some of them, may be defeated by the event of the suit, but this is true of all enforcement actions—creditors' bills, mortgage foreclosures, etc. This involves not the jurisdiction of the court, but the power to determine issues within that jurisdiction. We conclude, therefore, that the enforcement and administration of the mechanic's liens involved is within the exclusive jurisdiction of the circuit court of Jackson county, Mo.

It is, however, suggested that, since the mortgagee has instituted no independent suit in foreclosure, and submitted to the jurisdiction of the state court in that behalf by amended answer lodged after the filing of the petition in bankruptcy, the bankruptcy court retains jurisdiction of the mortgage lien, even though the administration of the mechanic's liens must be surrendered. The rule which must govern here has been thus stated by this court: "The legal custody of specific property by one court of competent jurisdiction withdraws it, so far as necessary to accomplish the purpose of that custody, until that purpose is completely accomplished from the jurisdiction of every other court. The court which first acquires jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal." Lang v. Railroad Company, 160 F. 355, 359.

See, also, McKinney v. Landon (C. C. A. 8) 209 F. 300, 306; Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

The equitable suit provided by section 3180, Rev. St. Mo. 1929, has for its purpose determining "the various rights, interests and liens of the various mechanics' lien claimants and claimants of other liens and owner of any interest in or leasehold upon said property and for enforcing the rights of any and all such persons in, to or against the property, being the lands and buildings and either of the same and for sale of such property, land and buildings or either of the same and for marshalling and distribution of the proceeds thereof among the parties according to their respective legal and equitable

rights therein. Such action shall be an equitable action for the purpose of determining, establishing and enforcing the various and respective rights of the parties thereto and for the purpose of marshalling, applying and distributing the proceeds of the sale of such property that may be ordered and decreed in said action."

All persons claiming any lien or incumbrance upon, or rights in, the property shall be made parties. The scope of the act is similar to that of the West Virginia statute providing for the enforcement of a judgment against real estate by creditors' suit as described in Straton v. New, Jr., supra. The full accomplishment of the purpose of the equitable enforcement suit pending in the state court requires dominion and control of parties and subject-matter. The mortgagee was made a party to that suit, and served prior to the filing of the petition in bankruptcy. The state court had jurisdiction over the mortgagee and others for the purpose of determining the respective rights of the parties, and of marshaling and distributing the proceeds of any sale that might be ordered and decreed. Of this it could not be divested by the order of the bankruptcy court. This accords also with the policy of the law under which, in proper cases, the bankruptcy court may draw to itself the administration of all matters affecting the estate, in order that that administration may be lodged in a single court. It follows that the order appealed from must be set aside and held for naught, and the cases remanded to the District Court, with directions that the injunctive orders complained of be dissolved, and that the trustee in bankruptcy be authorized to intervene in the pending state court action, if the interests of the estate so demand. It is so ordered.

BOOTH, Circuit Judge, concurring in part.

I concur in the result and also in the opinion, except that portion thereof which holds that this court has jurisdiction of the appeal under section 129, Jud. Code (28 USCA § 227).

I do not think that the "hearing" before the referee in bankruptcy on the sole question of his jurisdiction was such a "hearing" as would give to the restraining order the character of an interlocutory injunction, and make it an appealable order under section 129, Jud. Code.

A "hearing" to have that effect must, in my opinion, be one on the merits of the application for the injunction. This is my understanding of the holding in the case of Western Union Telegraph Co. v. United States & Mexican Trust Co., 221 F. 545 (C. C. A. 8), cited in the majority opinion.

In the case of Field v. Kansas City Refining Co., 296 F. 800, 802 (C. C. A. 8), also cited in the majority opinion, the order appealed from was described by this court, in its opinion, thus: "Not only was the order in effect a temporary injunction, but it was such in name also."

I prefer to base the jurisdiction of this court on the ground that the present "appeal" is an equivalent of the "petition to revise" which existed, section 24b of the Bankruptcy Act, prior to the passage of the Act of May 27, 1926 (44 Stat. 664, 11 USCA § 47(b), and which "petition to revise" was the approved method of bringing before the appellate court the question of the jurisdiction of the referee in bankruptcy. In re Rathman, 183 F. 913 (C. C. A. 8); In re Weidhorn (C. C. A.) 253 F. 28; Id., 253 U. S. 268, 40 S. Ct. 534, 64 L. Ed. 898; Gibbons v. Goldsmith (C. C. A.) 222 F. 826; Board of Commissioners v. Keil (C. C. A.) 259 F. 76.

The Act of May 27, 1926, substituted an "appeal" in place of a "petition to revise," but, in my judgment, did not change the essential character or scope of the procedure to obtain review.