City of Utica, Plaintiff, *v.* Gold Medal Packing Corporation et al., Defendants.

Supreme Court, Special Term, Oneida County, February 6, 1967.

*Pinsky & Pinsky, Michael L. Carlin, Hubbard, Felt & Fuller, M. Gilbert Hubbard, Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Laurence F. Sovik, Richard O'C. Kehoe, Griffith, Tibbits & Crego, Hadley W. Griffiths, Shaw J. Dallal, Joseph A. Berson, Richard A. Frye, Burrell Samuels, James J. Hage, Evans, Pirnie & Burdick, Philip Evans, Raymond J. Ferris, Irving M. Basloe, D. Collis Wager, Gerald T. McDonald, Justin J. Mahoney,* and *Samuel T. Betts, III,* for defendants. *Lawrence Tumposky* for plaintiff.

RICHARD D. SIMONS, J. This is a proceeding brought by the trustee in bankruptcy of the defendant Gold Medal Packing Corporation by which the trustee seeks to intervene in the above-entitled action and for an order directing the Commissioner of Finance of Oneida County to turn over funds presently being held by the Commissioner to the trustee to be administered through the Bankruptcy Court. The trustee brings the motion by order of the Referee in Bankruptcy for the United States District Court for the Northern District of New York.

On December 30, 1964, the City of Utica commenced a condemnation proceeding to acquire Gold Medal Packing Corporation's property. In dispute is the sum of $542,354.54, plus interest, presently held by the Commissioner of Finance pursuant to two orders of this court and which represents proceeds of the condemnation award confirmed by this court on August 11, 1966. The named defendants are the original property owner, plus numerous creditors, taxing authorities, a receiver of the property appointed by order of the court June 12, 1963, and attorneys for defendant Gold Medal Packing Corp. seeking an adjudication of attorneys' liens under section 475 of the Judiciary Law.

At one time Gold Medal was engaged in meat processing and packaging in the City of Utica, New York. It acquired ownership of the business from James S. and Rose Scala and gave in return a real estate mortgage and a chattel mortgage both dated November 24, 1958 securing the amount of $362,500.

On January 1, 1963, Gold Medal defaulted on the mortgage and on March 1, 1963, the Scalas instituted an action to foreclose the mortgages on which there was then a balance due of $181,330.36, with interest from January 1, 1963. Service was completed on Gold Medal on March 4, 1963. On April 29, 1963, the Scalas assigned all their right, title and interest in the real estate mortgage and a collateral chattel mortgage to the defendant Chicago Dressed Beef Co., Inc. They also assigned their rights in the pending foreclosure action on the mortgages to the defendant, Chicago Dressed Beef Co., Inc. Before the foreclosure action was reached for trial, this condemnation proceeding was instituted by the city.

On August 15, 1963, an involuntary petition in bankruptcy was filed with the United States District Court for the Northern District of New York. A subpoena was issued on August 15, 1963 but service was never completed.

Nothing further was done on the bankruptcy proceeding until August 23, 1966 when an alias subpoena was served on Gold Medal returnable September 2, 1966. Service was effected by serving

the general manager of Gold Medal and by serving the Secretary of State on August 26, 1966.

Gold Medal filed a petition and notice of motion seeking to dismiss the petition of August 15, 1963 which was returnable September 26, 1966 in the District Court. On September 23, 1966, a petition and order to show cause seeking amendment of the original petition was executed, returnable on September 26, 1966.

On the return date, Gold Medal's attorney withdrew his motion to dismiss the petition and on September 28, 1966, the District Court denied the motion to dismiss and granted the motion to amend the original petition. Judgment was entered and an amended involuntary petition was filed September 28, 1966. Service was completed and Gold Medal was adjudicated bankrupt on November 25, 1966. The trustee was appointed on December 29, 1966 and immediately commenced this proceeding.

The trustee claims the Bankruptcy Court has exclusive jurisdiction to administer the moneys now held by the Commissioner of Finance as an asset of the bankrupt's estate. In opposition, it is argued that the award is properly under the jurisdiction of this court and subject to distribution pursuant to section 22 of the Condemnation Law and that the trustee is entitled only to such equity in the fund as the bankrupt might be entitled to after adjudication of the conflicting claims to the condemnation award.

The trustee, of course, acquires title to all property of the bankrupt from the date the petition is filed and may take the same into his possession and administer it as part of the bankrupt's estate subject to whatever valid liens may exist. (Bankruptcy Act, § 70, subd. [a]; U. S. Code, tit. 11, § 110, subd. [a].) It is the claim of the trustee that a valid petition was filed August 15, 1963, that the bankrupt was then the owner of the real property located in Utica, New York, and that therefore, the trustee is entitled to that property or the money which came into existence by reason of the condemnation of the property subsequent to bankruptcy. He claims that on August 15, 1963, the property came into the exclusive jurisdiction of the Bankruptcy Court and no subsequent condemnation action could be valid against the bankrupt without the consent of that court. He argues that the trustee is not bound by the order of confirmation and the proceeds of that condemnation are not legally in the custody of the State court and should be turned over to him. The State court may have physical possession of the proceeds, but obtained them wrongfully by proceeding after the petition in bankruptcy was filed without consent of the Bankruptcy Court.

The creditors claim first of all that the petition was not valid until 1966 because of the failure to issue a subsequent subpœna, that the property legally came into the custody of the State court prior to the filing of the petition, in any event, by the foreclosure action of March, 1963 by reason of the well-recognized rule that when an in rem action is started prior to the filing of the petition, the State court obtains exclusive jurisdiction to adjudicate existing liens to the property. Under those circumstances, of course, no consent would be required. The State court would take over constructive custody of the premises, thereby withdrawing them from the concurrent jurisdiction of other courts. It is argued that the condemnation action was in the nature of an involuntary conversion of the real property into money and could not and did not destroy the liens and claims against the real estate, and, that by operation of law, equitable liens attached to the award from the date title passed from the bankrupt to the City of Utica, those equitable liens being in lieu of the valid liens against the real property, that the custody of the State court was one and the same and uninterrupted and, therefore, the State court had the right to adjudicate all matters and claims relating to the real estate when the assets resulted from the condemnation.

If the subpœna issued August 23, 1966 was sufficient to give the court jurisdiction over the bankrupt's estate, the trustee in bankruptcy was vested with all property of the bankrupt as of August 15, 1963, since the date of cleavage is the date the petition was filed, regardless of when the trustee qualifies or enters upon the performance of his duties.

It is arguable that the Bankruptcy Court lost jurisdiction by reason of the failure to effect service of a subsequent subpœna on Gold Medal within the statutory time limit. (Bankruptcy Act, § 18; U. S. Code, tit. 11, § 41.) (But cf. 2 Collier, Bankruptcy, § 18.31.) In any event, any jurisdictional defect which may have existed was waived when Gold Medal withdrew its motion to dismiss the involuntary petition and appeared generally by answer in proceedings to amend before the District Court. (Fed. Rules Civ. Pro., rule 12; *Matter of Smith,* 117 F. 961; 2 Collier, Bankruptcy, §§ 18.32, 18.38.)

While some of the creditors opposed the proceedings in District Court, they were without standing to do so. (*Matter of Carden,* 118 F. 2d 677 [C. A. 2d], cert. den. 314 U. S. 647; 2 Collier, Bankruptcy, § 18.33.)

The Bankruptcy Court having jurisdiction of the parties, it became the custodian of all property in the actual or constructive possession of the bankrupt at the time of filing the original petition on August 15, 1963 even though valid liens may have existed

against the property. To protect this custody, the court could enjoin others from interference. If the liens were acquired more than four months before the petition in bankruptcy, then the creditors could elect to proceed to enforce their security in State court, but if Bankruptcy Court had exclusive jurisdiction of the *res,* the State court could proceed only with the consent of Bankruptcy Court. But where State court has exclusive jurisdiction of the *res* before the petition is filed, it may proceed to final adjudication of the matter. (21 C. J. S., Courts, § 529.)

On August 15, 1963, Gold Medal did not have possession, either actual or constructive, of its premises in Utica, New York. This court obtained jurisdiction of the property by institution of the foreclosure action on March 1, 1963 and service on Gold Medal March 4, 1963.

Where a proceeding in rem is instituted before the petition in bankruptcy is filed, the State court obtains jurisdiction of the property and the principal consideration is whether there is a valid lien effected to which that proceeding relates. The lien may be proscribed by the Bankruptcy Act and a proceeding may not be continued to create or enforce an invalid lien. (Bankruptcy Act, § 67, subd. [a]; U. S. Code, tit. 11, § 107, subd. [a].) But where a valid lien exists for more than four months prior to the filing of the petition, Bankruptcy Court is without power to enjoin the prosecution of an action by lien creditors instituted prior to the filing of the petition. (*Straton* v. *New,* 283 U. S. 318.) This applies specifically to mortgage foreclosures (1 Collier, Bankruptcy, § 2.63). The trustee argues that this court never came into actual possession of the property by the appointment of an appropriate receiver more than four months before the filing of the petition. When a receiver is appointed or whether or not a receiver is appointed by the State court is irrelevant. The mere institution of proceedings on a valid lien prior to bankruptcy is sufficient to prevent passage of the property to the Bankruptcy Court. (*Straton* v. *New, supra*; *McGonigle* v. *Foutch,* 51 F. 2d 455 [C. A. 8th]; *Russell* v. *Edmondson,* 50 F. 2d 175 [C. A. 5th]; *Murphy* v. *Bankers Commercial Corp.,* 203 F. 2d 645 [C. A. 2d]; 1 Collier, Bankruptcy, § 2.63.) Constructive custody of the property is sufficient and that custody attaches when the suit is commenced and jurisdiction of the parties obtained. The jurisdiction of the State court is not lost even though it has not actually assumed custody of the *res,* if the suit is one in which custody can be assumed at any time. (*Farmers' Loan & Trust Co.* v. *Lake St. El. R. R. Co.,* 177 U. S. 51; *Bryan* v. *Speakman,* 53 F. 2d 463 [C. A. 5th], cert. den. 285 U. S. 539; *Matter of Hoey, Tilden & Co.,* 292 F. 269.) This jurisdiction of the court permits

it to proceed to judgment, sale of the property and distribution of the proceeds, and the court first obtaining possession of the *res* is vested with the power to determine all controversies relating to it. (*Straton* v. *New, supra*; *Farmers' Loan & Trust Co.* v. *Lake St. El. R. R. Co., supra*; *Matter of Greenlie-Halliday Co.*, 57 F. 2d 173; *McGonigle* v. *Foutch, supra*; *Diamond* v. *Kimberly Constr. Co.*, 88 N. Y. S. 2d 26 [Botein, J.].)

Absent the intervening condemnation proceeding and award, the court had the power to proceed with the full consummation of ·the foreclosure action instituted before the date when the petition in bankruptcy was filed. On the other hand, without the foreclosure action which placed the bankrupt's real property in the custody of this court, the condemnation action instituted after the date of cleavage was clearly subject to attack since it affected property of the bankrupt otherwise in custody of the Bankruptcy Court and was pursued without the consent of that court. (*Chicago, Rock Is. & Pacific Ry.* v. *City of Owatonna*, 120 F. 2d 226.)

The mortgagees argue that the institution of the condemnation proceeding and transfer of the title to real estate to the City of Utica by order of this court January 27, 1965 did not terminate the equitable rights of those holding liens or incumbrances against the premises or for that matter, the owner of the premises. The rights of the parties to the real estate are transferred to the award in condemnation. When land is taken for a public use, the damages awarded take the place of the land in respect to all the rights and interests incident to the land. (*Utter* v. *Richmond*, 112 N. Y. 610; *Deering* v. *Schreyer*, 171 N. Y. 451; *Cohen* v. *Wasserman*, 238 F. 2d 683.) The rights of the parties to the proceeds of the condemnation are exactly the same as their rights to the real estate. It is contended that this court having acquired jurisdiction over the *res* of the real property by the institution of the foreclosure action which was pending at the time of condemnation, then the transmutation of that realty into cash does not affect jurisdiction even though conversion of the property was brought about subsequent to the filing of the petition. This court had custody of the property at all times from the institution of the foreclosure action until divestiture of the title by condemnation, and at that time by operation of law the court acquired jurisdiction of the condemnation proceeds in lieu of the property. (Condemnation Law, § 22.)

While the condemnation was a separate proceeding, the award and its distribution are the effective equivalents of a judgment, sale and surplus money proceeding (also a separate proceeding)

over which this court would have jurisdiction. (*Diamond* v. *Kimberly Constr. Co., supra.*)

Admittedly, it is an anomalous result to sanction a third party's action against property in a State court without the consent of Bankruptcy Court under these circumstances. However, there is a further basis to sustain the State court's jurisdiction. It has been held that the condemnation action is not invalid without the consent of Bankruptcy Court. (*Heffron* v. *Western Loan & Bldg. Co.,* 84 F. 2d 301 [C. A. 9th], cert. den. 299 U. S. 597; *Bailey* v. *Blackmon,* 14 F. 2d 16; *Robinson* v. *Kay,* 7 F. 2d 576; *Weaver Sons Co.* v. *Burgess,* 7 N Y 2d 172; 1 Collier, Bankruptcy, § 2.62.)

Whether or not an action in a court of concurrent jurisdiction may be instituted after the filing of a petition in bankruptcy is a matter of discretion with the Bankruptcy Court. If discretion rests with the court, any action in another forum cannot be void. Otherwise, no restraint would be required and there would be no need for the exercise of discretion on the part of the Bankruptcy Court.

It is not a question of the validity or invalidity of the liens sought to be enforced by the mortgagees and the judgment creditors. That determination remains subject to the Bankruptcy Act. Unsecured creditors are relegated to the summary jurisdiction of the Bankruptcy Court. The question is whether or not those liens which are valid must defer to the costs and expenses of the administration of the bankrupt's estate. The parties have made their choice in this respect by knowingly delaying before perfecting the bankruptcy. The involuntary petition remained in limbo for three years. For more than 20 months after the *lis pendens* was filed by the City of Utica, no creditor saw fit to pursue the involuntary bankruptcy but allowed an extensive and expensive proceeding to be completed and confirmed before they were ignited to activity a few days after the confirmation order was entered. The trustee does not advance any claim of fraud or preference which might invalidate these liens. The creditors, the Bankruptcy Court and the trustee have never objected to the condemnation proceedings or the award, nor do they now except insofar as the trustee seeks to intervene and obtain the money.

It is not a question of estoppel. The creditors cannot estop the trustee in bankruptcy by their actions. But the delay has allowed the property to come into the hands of the State court. The Bankruptcy Court is empowered to restrain the actions of this court or to avoid the sale if in the exercise of its sound discre-

tion, it deems it advisable to do so. (U. S. Code, tit. 28, § 2283; Bankruptcy Act, § 2; U. S. Code, tit. 11, § 29; 1 Collier, Bankruptcy, § 2.61, subd. [2]; § 2.62.) It has not. The condemnation proceeding is not invalid until such a determination is made. Thus, even without a finding that this court had exclusive jurisdiction of the *res,* the proceeds of the award were properly deposited with the Commissioner of Finance by its order until disbursed pursuant to section 22 of the Condemnation Law.

The trustee is a proper party to the condemnation (perhaps even a necessary party under section 2 of the Condemnation Law); but he obviously could not be joined because he was not appointed at the time. Under those circumstances, such title as the bankrupt enjoyed reposed in it for purposes of the condemnation proceeding until a trustee was appointed. The trustee's title to the property is derivative and, in this instance, the interest of the bankrupt and the trustee were coincidental. The trustee's absence does not invalidate the prior condemnation proceedings, but he is entitled to participate in all future proceedings. (*Matter of Holman,* 268 App. Div. 330.) The trustee's motion to intervene is granted.

It is the determination of the court that it has jurisdiction under section 22 of the Condemnation Law to adjudicate and determine the rights and claims of the respective parties in and to the award of condemnation made August 15, 1966 and distribute the proceeds accordingly. The trustee's motion to intervene is granted.